# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1079

———————

United States of America,

      Plaintiff - Appellee,

v.

Michael L. Buck,

      Defendant - Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the Western
\* District of Missouri.
\*
\*
\*

———————

Submitted: September 23, 2011
Filed: November 16, 2011

———————

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

———————

BYE, Circuit Judge.

Michael Buck pleaded guilty to one count of knowingly recruiting, harboring, transporting, providing, and obtaining a named female victim and others for labor and services in violation of 18 U.S.C. §§ 1590 and 1594. On appeal, Buck contends: (1) the district court[1] erred in denying his motion to withdraw his plea; (2) in the alternative, the court should have appointed counsel for the hearing on his motion to withdraw his plea; and (3) the court's written judgment conflicted with its oral pronouncement on whether Buck was sentenced consecutively. We affirm.

———————

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

I

This case arises out of a commercial sex trafficking operation in Kansas City, Missouri, and Independence, Missouri. Under the operation, Michael Buck forced female victims to engage in sex acts by threatening them with physical harm. By way of a telephone service, Buck would sell the services of the women in strip clubs, motels, apartments, and houses to his customer base. Buck was charged in a seven-count indictment with commercial sex trafficking, attempted commercial sex trafficking, attempted production of child pornography, and document servitude. A few weeks later, one additional count of attempted commercial sex trafficking and one count of witness tampering were added in a superseding indictment.

Originally, the court appointed Assistant Federal Public Defender Robert Kuchar to represent Buck. However, pursuant to Buck's request, on April 7, 2009, the court appointed Susan Hunt after Kuchar withdrew his representation. Despite Hunt's appointment, Buck once again became unhappy with his counsel, and he moved to appoint new counsel, or, in the alternative, to represent himself, which the magistrate judge considered in a pre-trial conference on May 4, 2010. Following the magistrate judge's denial of Buck's motion, and its admonishment to Buck regarding the perils of proceeding pro se, Hunt continued on as counsel for the remainder of the conference. However, the magistrate judge offered to contact Buck a few days later to determine whether he still wished to waive his right to counsel. Two days later, Buck indicated he intended to plead guilty, but even if the case proceeded to trial, he would continue to be represented by Hunt.

On May 12, 2010, Buck pleaded guilty to a one-count information charging him with knowingly recruiting, harboring, transporting, providing, and obtaining a named female victim and others for labor and services in violation of 18 U.S.C. §§ 1590 and 1594. At the hearing, the district court asked Buck a series of questions confirming his desire to waive certain rights and plead guilty. For instance, Buck

acknowledged he understood he was waiving his right to be charged by indictment in the course of pleading to the information. Buck also indicated he was satisfied with Hunt's representation and stated, "[s]he's done everything to the best of her ability that I can tell you." On at least two more instances, Buck indicated he had no complaints and was fully satisfied with Hunt's representation. Turning to the plea agreement, Buck stated he had received no promises other than those in the agreement causing him to plead, and no one had attempted to force him to plead guilty. Buck also confirmed he understood he would be unable to withdraw his guilty plea if he were sentenced to a term of imprisonment of fifteen years or less, as stated in the plea agreement. After the extensive plea colloquy, the district court accepted Buck's guilty plea as being made knowingly and voluntarily.

On October 21, 2010, Buck filed a pro se motion to withdraw his guilty plea. Buck alleged Hunt had "worked in tandem" with the government attorney to threaten and force him to plead guilty. In an accompanying affidavit, Buck alleged the government told him he should plead guilty or he would be given life imprisonment because the trial judge "does what the prosecutor wants." Buck accused Hunt of telling him to take the government's plea deal because there was no way he could win. Buck also stated Hunt indicated he would not receive more than a five-year sentence, despite the agreed-upon cap of fifteen years. According to Buck, Hunt stated the government attorney never goes to trial, and he would be offered such a good deal "that [he] would be a fool not to take it." Buck also alleged he was not provided with certain discovery at the time he entered his plea, and certain matters he requested to be investigated had not been pursued. In light of the above, Buck desired to withdraw his guilty plea and be appointed new counsel.

On October 25, 2010, the magistrate judge conducted another hearing on Buck's request to proceed pro se. At the hearing, Buck professed his innocence and discussed the conflict he was presented at the time of his plea. The government denied Buck's allegations and described the context of the plea meeting between it

and Buck. Hunt also described the meetings, noting the government had told Buck he would not win at trial, and the government had stated Buck would get a sentence of life imprisonment if he went to trial. However, Hunt denied Buck's allegations concerning the fairness of the trial judge. Hunt also indicated she told Buck she did not think he would get a life sentence, but that he would get a substantially higher sentence than fifteen years if he did not take the plea deal. Ultimately, Hunt indicated Buck wanted to go along with the final deal. In sealed proceedings near the end of the hearing, Buck indicated he wanted to represent himself because his counsel had refused to file a motion to withdraw his guilty plea for lack of a good faith basis. After taking the matter under advisement, the magistrate judge deferred further proceedings until November 2, 2010. At that time, the magistrate judge again advised Buck of the disadvantages of self-representation, but ultimately granted his request to represent himself after a thorough colloquy, with Hunt continuing on as stand-by counsel.

A few weeks later, the district court denied Buck's motion to withdraw his plea after hearing extensive testimony on each of his allegations. The court found Buck was never told he would get a life sentence if he did not plead guilty, or that he could not have a fair trial. The court further found Hunt adequately counseled him in relation to the plea deal, and none of her remarks forced Buck to plead guilty. The court also concluded Buck was provided with the discovery he complained of not receiving, and any information he claimed was not specifically investigated "was not worth investigating." In sum, the court stated, "I find that Ms. Hunt was not biased towards you, and that she was not prejudiced towards you, that she in fact did capably and adequately represent you to the point where you elected to proceed on your own behalf." Referring to Buck's representations at the plea hearing of his desire and willingness to enter a plea, the court denied Buck's motion to withdraw his plea.

The court proceeded to the sentencing phase of the hearing, during which Hunt returned to represent Buck. A key provision of the plea agreement discussed by the

parties was whether Buck's sentence would be reduced by a sufficient amount to give him credit for the time he already served in state custody. In compliance with its plea obligation, the government recommended Buck receive a concurrent sentence to the sentence he was serving at the time, with credit given for time-served in state custody. However, the government acknowledged this provision of the plea agreement was not binding on the court. In the end, the court sentenced Buck to fifteen years of imprisonment. Despite the recommendation from both parties to run the sentence concurrently, the court stated, "I reject the recommendation that the sentence run consecutively to the defendant's imprisonment under previous state or federal sentence."

On December 14, 2010, a separate hearing was held on the issue of restitution. Buck again requested the appointment of new counsel, and indicated he had looked into the possibility of filing a suit against Hunt. After the court informed Buck he could be represented by Hunt or proceed pro se, Buck chose the latter. The court again advised Buck of the disadvantages of self-representation, noting:

> I can tell you that it's been my observation that Ms. Hunt has done an admiral [sic] job of representing you in spite of the difficulties that you have presented in the case. She, in spite of all of that, has maintained a professional demeanor, and I have seen no evidence of anything other than the utmost professional conduct and effort presented by Ms. Hunt on your behalf in this case.

Restitution Tr. at 6. After hearing evidence, the court sentenced Buck to pay $386,440 in restitution, plus interest. Later that day, the court issued its written judgment, sentencing Buck to fifteen years of imprisonment. The judgment stated, "[t]he term of imprisonment imposed by this judgment shall run consecutively to the defendant's imprisonment under any previous state or federal sentence. Any comment by the court to the contrary or otherwise inconsistent with consecutive sentences was a misstatement and in error." Buck appeals.

II

Buck first challenges the district court's denial of his motion to withdraw his guilty plea, which we review for an abuse of discretion. United States v. Cruz, 643 F.3d 639, 641 (8th Cir. 2011). "After a guilty plea is accepted but before sentencing, a defendant may withdraw the plea if he establishes a fair and just reason for requesting the withdrawal." United States v. Heid, 651 F.3d 850, 853 (8th Cir. 2011) (internal quotation marks and citation omitted). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." Id. (internal quotation marks and citation omitted).

Buck contends the court abused its discretion because he was actually innocent of the charges against him, he entered a guilty plea only because of threats by his counsel and the government, and his counsel was not prepared for trial. Taken together, these complaints called into question the voluntariness of the plea, according to Buck. Ultimately, Buck argues his relationship with counsel became so irreparably strained that she could no longer represent him effectively.

"Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal only if the defendant demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." Cruz, 643 F.3d at 642 (internal quotation marks and citation omitted). "To establish deficient performance, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). "To show prejudice, the defendant must prove that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (internal quotation marks and citation omitted).

We conclude the district court did not abuse its discretion in denying Buck's motion to withdraw his plea. First, the record demonstrates Hunt was an effective advocate who fulfilled her obligations by pursuing Buck's claims and conducting investigations where appropriate. Hunt discussed with Buck the charges against him and assessed the options he maintained with respect to pleading or going to trial. See United States v. Murphy, 572 F.3d 563, 568 (8th Cir. 2009) ("It is undisputed [the defendant's] lawyer had access to the complete discovery file and discussed with [the defendant] the charges against him and the evidence in the case. [The defendant] fails to explain how his own lack of access to any specific discovery documents affected his decision to plead guilty or prejudiced him in any way."). Buck alleges Hunt failed to pursue various leads which may have established his innocence, but these alleged leads lacked any substance, at least in the sense that Hunt's failure to investigate further was not objectively unreasonable. See Cruz, 643 F.3d at 642 (concluding the defendant's allegations of his attorney's deficient performance in failing to bring up "lies" of the government were "unsupported by evidence or amount to minor discrepancies, and counsel's failure to pursue them at the suppression hearing was not objectively unreasonable"). Similarly, Buck's assertion he was forced into pleading guilty by Hunt and the government "working in tandem" is also foreclosed by the record. These allegations are similar to those we addressed in Cruz:

> Cruz's claim that his attorney pressured him into pleading guilty is also unsupported by the record. Cruz testified at the plea hearing that no one made any threats or promises, or tried to coerce him into pleading guilty. At the hearing on his motion to withdraw, Cruz stated that his attorney advised him to plead guilty because he had little chance of success at trial, but in the end it was Cruz's decision to plead guilty. This attorney also testified at the hearing and stated that he did not threaten or coerce Cruz, and that he had discussed the case and potential outcomes in detail with Cruz prior to the plea hearing. The magistrate judge also thoroughly explained the consequences of a guilty plea to Cruz at the change of plea hearing. Many defendants face difficult choices about whether to plead guilty or proceed to trial, and the potential

-7-

consequences of the different options are relevant to making that choice. An attorney's assessment of the likely outcome at a trial is one significant factor in a defendant's informed decisionmaking process. It does not amount to coercion that renders a plea involuntary.

Id. at 643. Like Cruz, the district court did not abuse its discretion in denying Buck's motion based on Buck's allegations regarding Hunt's deficient performance.

Moreover, although Buck's dissatisfaction with his attorney may be considered in determining whether he established a fair and just reason for withdrawing his plea, it is not dispositive because it did not negate the voluntariness of his guilty plea. United States v. Bastian, 603 F.3d 460, 464 (8th Cir. 2010). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." United States v. Alvarado, 615 F.3d 916, 920 (8th Cir. 2010) (internal quotation marks and citation omitted). At the change of plea hearing, Buck confirmed several times he was satisfied with Hunt's performance, stating, "[s]he's done everything to the best of her ability that I can tell you." Buck also stated he received no other promises forcing him to plead guilty. These sworn statements directly contradict his current assertions. See United States v. Pacheco, 641 F.3d 970, 975 (8th Cir. 2011) (concluding the defendant provided no support for her claim she was forced to plead guilty based on her contrary representations at her plea hearing wherein she stated she was "fully satisfied" with her attorney's representation); United States v. De Oliveira, 623 F.3d 593, 597 (8th Cir. 2010) (finding no error in the district court's denial of the defendant's motion to withdraw his plea where the defendant admitted under oath his guilty pleas were voluntary, he was satisfied with counsel's representation, and the record did not show his counsel was deficient).

Buck's prior sworn statements also belie his arguments with regard to the prospective sentence he faced. Namely, whether Hunt represented to him he would receive no more than a five-year sentence, he was fully advised in the plea agreement

and during the change of plea hearing of the possible fifteen-year term he faced. See United States v. Davis, 583 F.3d 1081, 1092 (8th Cir. 2009) ("Even if [the defendant's] allegations regarding the advice of his attorney were accepted as true, [the defendant's] plea agreement accurately described the procedure and requirements for obtaining a reduction for acceptance of responsibility.").

Finally, Buck's claims of innocence are unsupported by any evidence. "A conclusory assertion of innocence simply does not satisfy his burden of showing a fair and just reason for permitting a withdrawal of what he had solemnly made under oath." Cruz, 643 F.3d at 643 (internal quotation marks and citation omitted). Under the circumstances, Buck failed to show a fair and just reason for withdrawing his guilty plea, and therefore the district court did not abuse its discretion in denying his motion.

## III

In the alternative, Buck argues he should be appointed counsel for a new hearing on his motion to withdraw his plea because he was denied the right to counsel during the hearing. Buck contends he made clear he did not want to represent himself at the hearing, but the court failed to conduct a hearing on his request for counsel, and his lack of counsel was prejudicial. For instance, he points to his inadvertent waiver of his attorney-client privilege at the hearing, and his inability to have an attorney conduct certain investigations he sought. Buck argues he represented himself only because his counsel would not file a motion to withdraw his plea and his pro se motion could only be considered if he waived his right to counsel. Under these circumstances, Buck claims his waiver was not knowing and voluntary.

"We review denial of a request for new counsel for abuse of discretion." United States v. Anderson, 570 F.3d 1025, 1031 (8th Cir. 2009) (internal quotation marks and citation omitted). "Appointment of new counsel is warranted only when

the defendant demonstrates justifiable dissatisfaction with his appointed attorney." United States v. Barrow, 287 F.3d 733, 737 (8th Cir. 2002). "[J]ustifiable dissatisfaction necessitating new counsel can arise from an irreconcilable conflict between the defendant and the attorney, a complete breakdown in their communications, or an actual conflict of interest resulting from continued representation." United States v. Rodriguez, 612 F.3d 1049, 1054 (8th Cir. 2010). "Given the importance of the attorney-client relationship, the court must conduct an adequate inquiry into the nature and extent of an alleged breakdown in attorney-client communications." United States v. Taylor, 652 F.3d 905, 908 (8th Cir. 2011) (internal quotation marks and citation omitted).

We conclude the district court did not abuse its discretion by not appointing new counsel for Buck in the withdrawal hearing. At the outset, we note Buck's contention is largely undercut by his direct statements at the withdrawal hearing:

> THE COURT: And, Mr. Buck, you have previously indicated and in a hearing before [the magistrate judge] were given the opportunity to represent yourself on your motion to withdraw your guilty plea. Is it still your desire to represent yourself on that matter, Mr. Buck?
>
> THE DEFENDANT: Yes, sir.

Sent. Tr. at 3. Buck affirmatively represented he wished to represent himself during the hearing, contrary to his current claims of wanting substitute counsel.

Even if Buck made a request for substitute counsel in his earlier written motion, we conclude the court did not abuse its discretion in denying the request. "A criminal defendant does not have the absolute right to counsel of his own choosing." United States v. Espino, 317 F.3d 788, 798 (8th Cir. 2003). Rather, "[t]he focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney." Barrow, 287 F.3d at 738.

-10-

"Justifiable dissatisfaction includes an irreconcilable conflict or a complete breakdown in communication . . . [b]ut it does not include a defendant's frustration with counsel who does not share defendant's tactical options but continues to provide zealous representation." Id.

As discussed above, the record fails to demonstrate Hunt was deficient in her representation, much less a total breakdown in communication between Hunt and Buck. To be sure, while Buck and Hunt maintained some differences on strategic matters such as investigating certain leads, the record does not show a complete breakdown in communication or an irreconcilable conflict. See Anderson, 570 F.3d at 1032 ("[W]e conclude that the district court conducted an adequate inquiry into the facts underlying [the defendant's] complaints . . . , and did not abuse its discretion in denying [counsel's] ex parte motion because [the defendant] failed to show that there was a total communication breakdown rather than an unwillingness on [the defendant's] part to communicate with [counsel].") (internal citation omitted); United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992) ("Although [the defendant] and his attorney differed on trial tactics and strategy, and expressed frustration with each other, the record does not reflect an irreconcilable conflict or complete breakdown in communication between them.").

Given Hunt's effective representation, the district court could require Buck to choose between her representation and proceeding pro se. See Swinney, 970 F.2d at 498 ("[T]he district court may properly require the defendant to choose either to proceed *pro se*, with or without the help of standby counsel, or to utilize the full assistance of counsel, who would present the defendant's defense."). Buck was provided with numerous opportunities to consider the pros and cons of self-representation, and the magistrate judge and the district court repeatedly advised him of the perils of self-representation. See United States v. Mentzos, 462 F.3d 830, 838 (8th Cir. 2006) (concluding the defendant's decision to proceed pro se was knowing and voluntary where the court provided the defendant with numerous opportunities

to obtain representation, encouraged him to do so, and warned him against representing himself); United States v. Exson, 328 F.3d 456, 460-61 (8th Cir. 2003) (concluding the district court did not abuse its discretion in declining substitute counsel where the court "allowed [the defendant] several opportunities to present his concerns about his attorney" and the defendant's allegations were inadequate to support the appointment of new counsel). Accordingly, Buck's "decision to represent himself was not rendered involuntary simply because the court required him to choose between qualified counsel and self-representation." Mentzos, 462 F.3d at 839; see also Taylor, 652 F.3d at 909 (concluding the district court, after properly cautioning the defendant about the perils of self-representation, could require the defendant to choose between proceeding pro se or proceeding with prepared counsel).

Finally, at most, the record shows Buck wanted to proceed pro se for the sole purpose of filing his motion to withdraw his guilty plea. Indeed, after his motion was denied, Buck again retained Hunt's representation during sentencing, which shows no irreconcilable conflict. During the hearing on the motion to withdraw, Buck was able to present all of his arguments underlying his motion to withdraw his guilty plea, and the district court conducted an exhaustive examination into each of these claims. See Taylor, 652 F.3d at 908 ("It is clear from this record that the district court made a careful and thorough inquiry into [the defendant's] repeated claims of justifiable dissatisfaction with appointed counsel [] before denying [the defendant's] requests for substitute counsel."). Under these circumstances, we conclude the district court conducted an adequate inquiry into the facts underlying Buck's complaints and did not abuse its discretion in denying his motion.

IV

Buck last argues the district court's written judgment and oral pronouncement conflict. In the plea agreement, the government stated it would recommend Buck's sentence be reduced "by the amount of time already served in state custody from the

-12-

date of the first appearance in this federal case." During the sentencing hearing, the court inquired into the time-served credit in the plea agreement, and the government stated it "recommend[ed] to the Court pursuant to paragraph 10(f) on page 7 of the plea agreement that [Buck's sentence] run concurrently." Sent Tr. at 123. When the court imposed Buck's sentence, it stated, "I reject the recommendation that the sentence run consecutively to the defendant's imprisonment under previous state or federal sentence." Id. at 127. According to Buck, this statement means the court accepted the recommendation that the sentence run concurrently. However, the court's written judgment stated, "[t]he term of imprisonment imposed by this judgment shall run consecutively to the defendant's imprisonment under any previous state or federal sentence. Any comment by the court to the contrary or otherwise inconsistent with consecutive sentences was a misstatement and in error."

Buck argues the written judgment conflicts with the oral pronouncement, and the court's attempt to correct a substantive error in the oral pronouncement via the written judgment was impermissible. To the extent there was ambiguity in the court's statement, Buck contends it must be construed favorably in his favor. Therefore, under the oral pronouncement, Buck contends he is entitled to a concurrent sentence.

"As the government concedes, when an oral sentence and the written judgment conflict, the oral sentence controls." United States v. Mayo, 642 F.3d 628, 633 (8th Cir. 2011). "There is no dispute that ambiguities in the sentence pronouncement are to be construed in favor of the defendant." Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992). But in determining whether ambiguity exists, "[t]he sentence pronouncement must be read carefully to discern the sentencing judge's intent." Id. at 1359. "We look to both the written record and the hearing record if the reasons provided are not irreconcilable." United States v. Haversat, 22 F.3d 790, 794 n.2 (8th Cir. 1994). "If the actual verbal judgment is ambiguous, the intent of the sentencing court may be construed from the entire sentencing pronouncement." United States v. Tramp, 30 F.3d 1035, 1037 (8th Cir. 1994).

-13-

In considering the record here, it becomes clear the court simply misspoke during its oral pronouncement. Neither party recommended a consecutive sentence, and thus the court could not have "rejected" a non-existent recommendation. Moreover, any ambiguity in the pronouncement was further clarified by the written judgment, which noted the prior statement regarding a consecutive sentence was in error. Accordingly, rather than conflict with the oral pronouncement, "[t]he written reasons appear to simply supplement the oral ruling." Haversat, 22 F.3d at 794.

In the end, "[m]ere impreciseness of language will not negate the court's obvious intent." Tramp, 30 F.3d at 1037 (internal quotation marks and citation omitted). Here, "the intent easily discerned from a careful reading of the pronouncement is consistent with the judgment and order of commitment entered by the sentencing judge." Holloway, 960 F.2d at 1359. Therefore, we reject Buck's argument to apply a concurrent sentence.

V

For the foregoing reasons, we affirm the district court.

_____