# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2320

_____

United States of America

*Plaintiff - Appellee*

v.

David Paul Makeeff

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2016
Filed: April 29, 2016
[Published]

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

David Paul Makeeff conditionally pleaded guilty pursuant to a written plea agreement to possession of child pornography, in violation of 18 U.S.C.

§ 2252(a)(4)(B) and (b)(2), preserving his right to appeal the district court's[1] denial of his motion to suppress evidence. On appeal, he argues that the seizure of a Universal Serial Bus (USB) drive[2] during a court-authorized, supervised-release search of his residence by federal probation officers violated his Fourth Amendment rights. Additionally, he argues that the probation officers lacked authority to examine the contents of the USB drive, thereby engaging in an impermissible search under the Fourth Amendment. We affirm the district court's denial of Makeeff's motion to suppress evidence.

## I. *Background*

In 2005, Makeeff was convicted in federal court of possessing 1,500 images of child pornography; he was sentenced in 2006 to 41 months' imprisonment and 10 years of supervised release. As part of his supervised release, the district court ordered Makeeff "not [to] commit another federal, state or local crime" and "not [to] unlawfully possess a controlled substance." The court also ordered Makeeff to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer" and to "permit a probation officer to visit him . . . at any time at home or elsewhere and [to] permit confiscation of any contraband observed in plain view of the probation officer." Additional supervised-release terms specific to Makeeff included the requirement that he "participate in and follow the rules of sex offender treatment

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

[2]"Universal Serial Bus or 'USB' refers to 'a standardized technology for attaching peripheral devices to a computer.'" *United States v. Hager*, 710 F.3d 830, 834 n.3 (8th Cir. 2013) (quoting *New Oxford Am. Dictionary* 1907 (3d ed. 2010)). "Flash memory is a technology used in . . . USB drives for the storage and transfer of data between computers and other digital products." *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-10-CV-0481-M-BD, 2010 WL 5093945, at *1 n.1 (N.D. Tex. Nov. 10, 2010), *report and recommendation adopted*, No. 3-10-CV-0481-M-BD, 2010 WL 5093944 (N.D. Tex. Dec. 13, 2010), *aff'd sub nom.*, *Fast Memory Erase, LLC v. Intel Corp.*, 423 F. App'x 991 (Fed. Cir. 2011).

as directed by the Probation Office." And, he was ordered to "not view or possess any form of pornography" and to "not have access to or possess a computer at home or elsewhere without the prior approval of the U.S. Probation Office."

On August 5, 2013, the court modified Makeeff's supervised release because of Makeeff's failure to follow multiple conditions of that release. Makeeff "admitted to drinking alcohol, abusing his Wellbu[]trin, using drugs, and viewing pornography. Moreover, [he] admitted [that] he had lied to his heart doctor in order to get a medical waiver preventing him from taking polygraphs." Specifically, Makeeff admitted that, during the prior six months, he had used methamphetamine, marijuana, and synthetic marijuana. He confessed to drinking alcohol throughout his entire supervised-release term and hiding it in his house so that the probation officers would not see it during home visits. He "disclosed [that] he ha[d] periodically viewed pornography on his wife's computer," but he stated that he was "'relatively sure' [that] it was all adult pornography." Makeeff agreed to certain modifications of his supervised-release conditions. Most notably, he agreed to submit to reasonable searches by a probation officer "based upon reasonable suspicion of contraband or evidence of a violation of a condition of release."

On May 2, 2014, two probation officers conducted an unannounced home visit at Makeeff's residence. One of the probation officers had received a tip that Makeeff bragged about using a computer and possessing child pornography while on supervision. Makeeff and his wife were present at the time that the probation officers conducted the visit. The probation officers observed a black USB drive sitting on a table in plain view upon entering a spare bedroom of the residence. Makeeff initially denied ownership of the USB drive and stated that he had no knowledge as to the USB drive's contents. Makeeff told the probation officers that the USB drive belonged to his wife; however, his wife denied ownership of it. Both Makeeff and his wife gave the probation officers consent to look at the contents of the USB drive, though at some unknown point this consent was withdrawn. But at no point did Makeeff or his wife

tell the probation officers that they owned or had an interest in the USB drive. Before the probation officers viewed the USB drive's contents, Makeeff warned them that the USB drive contained a virus. When the probation officers questioned Makeeff regarding his knowledge of the virus on the USB drive, he refused to answer.

Shortly after the probation officers left Makeeff's residence, they received a call from Makeeff. Makeeff admitted to using the computer, using the internet, and viewing adult pornography. He also claimed that the USB drive contained a virus that put child pornography images onto the device. That same day, after receiving Makeeff's call, one of the probation officers viewed the contents of the USB drive and confirmed that it contained child pornography. The probation office immediately filed a petition to revoke Makeeff's supervised release.

On May 3, 2014, Makeeff contacted his probation officer via text message, writing, in part:

> I gues i shld hve started at the beginning yesterday, but i was just so rattled by the unfortuitous chain of events. It did start whn i convinced Julie we needed sme porn 2 spice up our sex life. So we looked around and we downloaded frm a couple of diffrnt sites. Two days later we get an email frm a Consantine Fitsepeya, claimng 2 b with the Russian police. He said that what we downloaded was actually child porn, and unles we paid him 5000, he would send our file 2 us authorities, I argued with him that it wsnt, he said take a closer look, so I did.

(Grammatical and spelling errors in original.)

The probation officer contacted a special agent with the Department of Homeland Security, Homeland Security Investigations, who obtained a search warrant for the USB drive. A forensic examination of the USB drive showed that it contained approximately 3,002 images and 10 videos depicting child pornography. The forensic

analysis concluded that the child pornography was not placed on the USB drive by a virus, as Makeeff had claimed.

The court held a revocation hearing on June 10, 2014. Makeeff admitted two of the three violations that the government alleged: unauthorized use and possession of a computer and possessing and viewing pornography. The court deferred ruling on the allegation that Makeeff possessed child pornography and instead relied on Makeeff's admitted violations in finding by a preponderance of the evidence that he had violated the special terms and conditions of his supervised release. The court revoked Makeeff's supervision and sentenced Makeeff to 45 days' imprisonment and a 60-month term of supervised release. Makeeff does not challenge this judgment on appeal.

On June 18, 2014, a grand jury returned a two-count indictment charging Makeeff with receipt of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) ("Count 1"), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) ("Count 2"). The charges stemmed from the contents of the aforementioned USB drive. Makeeff moved to suppress the contents of the USB drive, claiming that the seizure and search of the USB drive violated his Fourth Amendment rights.

The district court denied Makeeff's motion to suppress. First, the court concluded that the probation officers' seizure of the USB drive was predicated on reasonable suspicion and the authorization to search Makeeff's residence set forth in the modified conditions of supervised release. Having found that the probation officers had reasonable suspicion and an applicable search condition, the district court concluded that Makeeff was not entitled to relief. (Citing *United States v. Knights*, 534 U.S. 112 (2001) (upholding a search of a probationer's residence based on reasonable suspicion and a probation order).)

Second, the district court concluded that the USB drive contained child pornography and that the probation officers had reasonable suspicion to believe that Makeeff violated the terms of his supervised release by using the USB drive on a computer to store pornography. As a result, the court determined that the probation officers were entitled to search the USB drive without a warrant.

Following the district court's denial of Makeeff's motion to suppress, Makeeff conditionally pleaded guilty pursuant to a written plea agreement to Count 2. The district court sentenced Makeeff to 120 months' imprisonment—the mandatory minimum for recidivist sex offenders who possess child pornography—and 10 years of supervised release.

## II. *Discussion*

The sole issue on appeal is whether the district court erred in denying Makeeff's motion to suppress the evidence contained on the USB drive. Makeeff argues that both the probation officers' seizure and the subsequent search of the USB drive violated his Fourth Amendment rights.[3]

"We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." *United States v. Neumann*, 183 F.3d 753, 755 (8th Cir. 1999) (citation omitted).

---

[3]The government argues that Makeeff lacks standing to challenge the seizure and search of the USB drive because both he and his wife disavowed owning it. "[B]ecause we conclude [that the probation officers] had [reasonable suspicion] to [seize and] search the [USB drive], we do not address the government's alternative argument that [Makeeff] lacked standing to challenge the [seizure and] search." *See United States v. Parker*, 72 F.3d 1444, 1451 n.3 (10th Cir. 1995).

A. *Seizure of the USB Drive*

Makeeff challenges the reasonableness of the probation officers' seizure of the USB drive. First, Makeeff argues that the facts that the district court identified as establishing reasonable suspicion are insufficient to support such a finding. Second, he argues that no supervised-release condition prohibited his ownership of a USB drive to justify its seizure. Third, he contends that no probable cause existed to support any recognized exception to the warrant requirement to justify the government's seizure of the USB drive.

"[T]he reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118–19 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). An individual's "status as a probationer subject to a search condition informs both sides of that balance. Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." *Id.* at 119 (quotations and citations omitted). The Supreme Court has recognized that "probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (quotations and citations omitted). As a result, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* When a court imposes a search condition upon a probationer, it "significantly diminishe[s] [the probationer's] reasonable expectation of privacy." *Id.* at 120 (footnote omitted).

"In assessing the governmental interest side of the balance, it must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.'" *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987)). The government's "interest in apprehending violators of the criminal law, thereby protecting potential victims of

-7-

criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Id.* at 121. The Supreme Court has held that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of [a] probationer's house." *Id.* The degree of individualized suspicion necessary for "a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Id.* (citation omitted). An officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish "enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* "The same circumstances . . . render a warrant requirement unnecessary." *Id.*

"Two conclusions emerge from *Griffin* and *Knights*." *United States v. Lifshitz*, 369 F.3d 173, 181 (2d Cir. 2004). First, "[p]robationary searches—whether for law enforcement or probationary purposes—are acceptable under *Knights* if based upon reasonable suspicion (or potentially a lesser standard)." *Id.* Second, "under the 'special needs' doctrine articulated in *Griffin*, searches for probationary purposes will be upheld if authorized by a law that is in itself reasonable. *Griffin* does not, however, itself elaborate criteria for determining the reasonableness of a regulation." *Id.*

"'[F]ederal supervised release, . . . in contrast to probation, is meted out in addition to, not in lieu of, incarceration.'" *Samson v. California*, 547 U.S. 843, 850 (2006) (alterations in original) (quoting *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002)). "Supervised release, parole, and probation lie on a continuum. The most severe is 'supervised release,' which is . . . followed, in descending order, by parole, then probation[.]" *Lifshitz*, 369 F.3d at 181 n.4 (citation omitted). Thus, as the district court noted, "the current case involves the most circumscribed expectation of privacy."

Here, we conclude that reasonable suspicion existed for the probation officers' seizure of the USB drive. A modified condition of Makeeff's supervised release was

that he "submit to a search of his . . . residence . . . by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or *evidence of a violation of a condition of release*." (Emphasis added.) In denying Makeeff's motion to suppress, the district court identified seven facts that, in totality, it found amounted to reasonable suspicion to seize the USB drive found in plain view in Makeeff's residence in light of the search condition: (1) Makeeff had a prior conviction for possession of child pornography; (2) he was prohibited from viewing or possessing any pornography; (3) he was prohibited from accessing or possessing a computer without the probation office's approval; (4) he had his supervised-release conditions modified after he viewed pornography, which he claimed that he was "relatively sure" was adult pornography; (5) the probation office received a tip that Makeeff "bragged" about using a computer and possessing child pornography; (6) inside Makeeff's residence, they located the USB drive—a device that is accessible via computer—which Makeeff was prohibited from possessing without his probation officer's permission and to which the tip related; and (7) despite the probation officers' discovery of the USB drive in plain view in Makeeff's residence, they observed both Makeeff and his wife deny its ownership. Under the totality of these circumstances, it was reasonable for the officers to believe that seizable items were stored on the USB drive and that they needed to secure it.

As the government argues on appeal, the existence of the USB drive alone in Makeeff's residence was sufficient to trigger reasonable suspicion. A USB drive is a common computer accessory used to store data and is readily usable as a means to conceal prohibited images from discovery. Furthermore, Makeeff's prior child-pornography conviction, his prior violation of viewing pornography, the tip that he was again viewing child pornography, and the USB drive's presence in his home *collectively* created reasonable suspicion that Makeeff was once again viewing pornography—a violation of his supervised-release terms. We therefore conclude that the probation officers had both the requisite reasonable suspicion and the search condition necessary to lawfully seize the USB drive.

-9-

## B. *Search of the USB Drive*

Makeeff argues that even if the probation officers lawfully seized the USB drive, the search of that drive without a warrant was unlawful. He asserts that no supervised-release condition authorized a search of his personal effects, which includes the USB drive, upon reasonable suspicion. He also contends that the government failed to articulate its justification for the search of the USB drive. As a result, he argues that any search of the USB drive required a warrant.

Relying on *United States v. Hamilton*, 591 F.3d 1017 (8th Cir. 2010), the district court found that Makeeff's admission to his probation officer that he had used a computer and that the USB drive in his possession contained adult and child pornography, combined with the aforementioned facts, formed a reasonable suspicion that Makeeff violated the conditions of his supervision prohibiting his unauthorized use of a computer and his use or possession of any type of pornography. *See Hamilton*, 591 F.3d at 1021–24 (holding that parole officers had reasonable suspicion of parole violation or crime based on (1) the officers' knowledge that the defendant had prior convictions related to child pornography and that the defendant had a computer and used the internet; (2) the officers hearing a commotion during the time that it took the defendant to get dressed and answer the door; (3) the defendant's consent to a home visit and initial search; and (4) the officers observing empty beer cans in plain view, indicating that the defendant had violated a parole condition related to alcohol consumption and justifying officers' continued search, including checking the defendant's computer, where officers saw media title "Daddy and Daughter," which provided further justification to search for child pornography).

As in *Hamilton*, the fact that the modified supervised-release condition did not explicitly state that the probation officers could search Makeeff's personal effects is not dispositive. The supervised-release condition advised Makeeff to "submit to a search of his . . . residence . . . based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." As explained *supra*, the USB drive was found in

Makeeff's residence and constituted "evidence of a violation of a condition of release." The following facts provided the probation officers with "ample reasonable suspicion to search [the USB drive] further for child pornography." *See Hamilton*, 591 F.3d at 1024. First, the probation officers knew that Makeeff was on supervised release for possessing child pornography. Second, they knew that Makeeff had previously violated the terms of his supervised release by using alcohol and hiding it during home visits, viewing pornography that he was "relatively sure" was only of adults, and lying to his heart doctor so that he could avoid a sex-offender polygraph. Third, the parole officers went to his residence on a "tip" that he was viewing child pornography on a computer. Fourth, they discovered the USB drive in plain view, and Makeeff denied ownership. Fifth, and most importantly, before the probation officers searched the drive, Makeeff telephoned them and *admitted* that the USB drive *did contain child pornography*; therefore, Makeeff had violated the terms of his supervised release. As a result, the parole officers were justified in searching the USB drive based on a reasonable suspicion that it contained child pornography. We therefore conclude that the probation officers had both the requisite reasonable suspicion and the search condition necessary to lawfully search the USB drive.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____