# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1025

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Donte Collier

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota

_____

Submitted: May 15, 2019
Filed: August 1, 2019

_____

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Anthony Donte Collier was convicted in the district court[1] of five counts of sex trafficking and attempted sex trafficking, in violation of 18 U.S.C. §§ 1591(a)(1),

---

[1]The Honorable Ralph R. Erickson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation at the time of judgment, was a United States District Judge for the District of North Dakota during the trial in this matter.

1591(b)(1), and 1594(a); and one count of conspiracy to commit an offense against the United States, specifically facilitating the promotion and management of a business enterprise involving prostitution, in violation of 18 U.S.C. § 371. Collier filed an appeal and we affirm.

## I. Background

Collier was on supervised release in Minnesota for a prior state crime when his supervising officials learned he was engaging in the business of prostitution. Collier was arrested at the request of a supervising official, who then conducted a warrantless search of Collier's cell phone. Local police later secured a warrant to search all of Collier's electronic devices. Further investigation led officials to believe that Collier had been forcing several women to engage in commercial sex acts and give him the proceeds from those acts. Following a jury trial, Collier was convicted of conspiracy, interstate and foreign travel or transportation in aid of racketeering enterprises, sex trafficking, and attempted sex trafficking.

## II. Analysis

Collier raises numerous issues on appeal, including denial of his motion to suppress; improper jury instructions; denial of his right to counsel; various evidentiary and witness errors; violation of due process rights; judicial bias; and the denial of his motion to dismiss based on the sufficiency of the evidence. For the reasons discussed below, we find each contention ultimately fails.

### A. Search of Collier's Cell Phone

Collier alleges the district court erred in denying his motion to suppress evidence gained from the search of his cell phone. The phone was searched without a warrant during Collier's arrest. In reviewing the denial of a motion to suppress

evidence, "[w]e review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015) (quoting *United States v. Stephenson*, 924 F.2d 753, 758 (8th Cir. 1991)).

"A warrantless search is per se unreasonable under the Fourth Amendment absent a recognized exception." *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013). Courts "'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 118 (2001)). "[T]o determine whether the Fourth Amendment forbids a search, we weigh the degree to which a search intrudes upon an individual's reasonable expectation of privacy against the degree to which the government needs to search to promote its legitimate interests." *United States v. Brown*, 346 F.3d 808, 811 (8th Cir. 2003).

The district court denied Collier's motion to suppress evidence discovered as a result of the warrantless search of his phone. As to the cell phone search by the supervising official (Agent Welle), the district court held that Collier had a reduced expectation of privacy while on supervised release and was subject to Standard Condition of Supervised Release No. 13, which provided that Collier "must submit at any time to an unannounced visit and/or search of [his] person, vehicle, or premises by the agent/designee." The district court found that Welle was not acting as an agent for the police. Collier's computer and other cell phones were also permissibly seized the following day, given that these items could have been searched because of Collier's reduced expectation of privacy.

Collier argues the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), forbade the warrantless search of his cell phone at the time of his arrest. Although *Riley* held that police officers must generally obtain a warrant before

-3-

searching a cell phone seized incident to arrest, *see id.* at 386, this court has recognized "*Riley* addressed privacy interests of an arrestee, not the circumscribed interests of an offender serving a term of supervised release." *United States v. Jackson*, 866 F.3d 982, 985–86 (8th Cir. 2017). This court has said "supervised release . . . involves 'the most circumscribed expectations of privacy.'" *Id*. at 985 (quoting *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016)). Searches of a person on supervised release further "substantial interests in preventing recidivism and facilitating an offender's reentry into the community." *Id.*

On the night of the search, Agent Welle requested an arrest warrant after failing to find Collier at the location where he was supposed to be and called the Moorhead police to arrest him. Additionally, Agent Welle testified he searched the phone to verify Collier's whereabouts that evening and he conducted the search on his own volition.

We hold Agent Welle's search was reasonable under these circumstances, where Collier was on restrictive supervised release[2] and suspected of engaging in illicit activities. In *Knights*, the Supreme Court explained that "reasonable suspicion" of a probationer's criminal activity can justify searching even a probationer's home, and that part of the government's justified concern is that a probationer "will be more likely to engage in criminal conduct than an ordinary member of the community." 534 U.S. at 121. Collier was also on sufficient notice, due to the conditions of his supervised release.[3] *See Jackson*, 866 F.3d at 985 (noting Jackson "was on clear

---

[2]Although Collier was under state supervised release, we see no reason to distinguish this search from one conducted while on federal supervised release. We note Collier was on Minnesota's "Intensive Supervised Release" program and subject to 24-hour supervision by multiple supervised release agents.

[3]Agent Welle also testified he transported Collier to a Minnesota Department of Corrections ("DOC") house following incarceration and that it was his common practice to inform persons on supervised release that supervising agents could search

notice that he was subject to the suspicionless search" while on supervised release). Therefore, under the totality of circumstances Collier did not have a reasonable expectation of privacy in the cell phone. As this search did not violate the Fourth Amendment, the district court did not err in denying Collier's motion to suppress.

## B. Jury Instructions

Collier raises two main issues with respect to the jury instructions: first, he argues the court's jury instructions did not properly reflect the statute's mens rea requirements and they constructively amended the indictment; second, he argues the district court improperly included a willful blindness jury instruction. We find both of these claims are without merit.

Collier acknowledges that because he failed to object to the jury instruction for the first claim, this court reviews for plain error. *United States v. Fast Horse*, 747 F.3d 1040, 1041 (8th Cir. 2014) (reviewing for plain error when the defendant "did not explicitly object to the relevant jury instruction"). Plain error exists where there is " (1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 1042 (quoting *United States v. Rush-Richardson*, 574 F.3d 906, 910 (8th Cir. 2009)).

Collier argues that jury instructions for his federal sex trafficking offenses (which must be committed "knowingly") failed to include a mens rea requirement for the criminal element requiring the conduct be committed "in or affecting interstate

---

their computers and cell phones. Furthermore, Minnesota DOC Division Directive 201.017 expressly authorized a search of Collier's cell phone if there were "reasonable grounds" to believe he was violating a condition of his supervised release.

or foreign commerce." 18 U.S.C. § 1591(a)(1). "The Supreme Court has stated that courts 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element.'" *United States v. Bruguier*, 735 F.3d 754, 758 (8th Cir. 2013) (en banc) (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009)). However, "[t]he Supreme Court has [also] explained "that situations where the term 'knowingly' does not apply to all elements that follow it 'typically involve special contexts or . . . background circumstances that call for such a reading.'" *Id.* (quoting same).

A number of other circuits[4] have already rejected the proposition that "knowingly" in 18 U.S.C. § 1591(a)(1) modifies "interstate or foreign commerce," and no circuit holds to the contrary. We join these circuits in concluding that "knowingly" does not apply to the interstate commerce element. This is consistent with our precedent holding that a mens rea requirement does not apply to the interstate commerce element in 18 U.S.C. § 922(g) (prohibiting felons from possessing firearms or ammunition). *See United States v. Garcia-Hernandez*, 803 F.3d 994, 997 (8th Cir. 2015). In *Garcia-Hernandez*, we noted "[t]he interstate commerce nexus . . . merely provides the basis for federal jurisdiction, and knowledge of this element is not required." *Id.* (quoting *United States v. Thompson*, 365 F. App'x 42, 43 (8th Cir. 2010) (unpublished)). Therefore, we find the district court

---

[4]*See United States v. Baston,* 818 F.3d 651, 662 (11th Cir. 2016); *United States v. Chang Ru Meng Backman*, 817 F.3d 662, 667 (9th Cir. 2016) (noting the interstate nexus element grammatically does not tie to "knowingly"); *United States v. Sayer*, 733 F.3d 228, 230 (7th Cir. 2013) ("[T]his court and others have concluded time and again that the interstate and foreign commerce elements in many other criminal statutes have no *mens rea* requirements."); *see also United States v. Corley,* 679 F. App'x 1, 6 (2d Cir. 2017) (unpublished); *United States v. Phea*, 755 F.3d 255, 265 (5th Cir. 2014) (holding jury instruction not requiring knowledge of the interstate nexus element in § 1591(a)(1) was not plainly erroneous).

correctly declined to apply knowingly to "interstate or foreign commerce" under 18 U.S.C. § 1591(a)(1).

Relatedly, Collier argues the jury instructions constructively amended his indictment. "A constructive amendment occurs when the essential elements of the offense charged in the indictment are altered in such a manner . . . that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007). Since the indictment did not apply the mens rea element to the interstate nexus phrase, the jury instructions were consistent and thus no constructive amendment occurred.

Collier also argues the district court erred by instructing the jury that 18 U.S.C. § 1591 merely required it to find Collier knew means such as force or coercion "would cause" his victims to engage in commercial sex acts without requiring it to find Collier himself used such means. This argument is meritless. The district court's instruction accurately reflected the statute's text — phrased in the present tense — prohibiting a person from "recruit[ing], entic[ing], harbor[ing], etc., a victim "knowing" means such as force or coercion "will be used to cause" victims to engage in such acts. 18 U.S.C. § 1591(a). Both the instruction and the statute require that Collier, who "recruit[ed], entic[ed], harbor[ed]," etc., his victims under §1591(a)(1), knew such means would be an instrumental cause in requiring his victims to engage in commercial sex acts, whether it was Collier himself or a third party who would use such means. Regardless, even if the jury instructions' use of the phrase "would cause" was technically erroneous, under plain error review Collier has not shown the error was plain or affected his substantial rights.[5]

_____

[5]We also reject Collier's argument that this instruction constructively amended the indictment because Collier acknowledges the indictment accurately reflected the statute in this respect, and, as we have explained, the jury instructions were consistent with the statute.

-7-

As to Collier's claim challenging the district court's willful blindness instruction, we review for abuse of discretion and will affirm "[i]f the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Whitehill*, 532 F.3d 746, 751 (8th Cir. 2008) (quoting *United States v. Lalley*, 257 F.3d 751, 755 (8th Cir. 2001)) (alteration in original). Collier argues that "[i]n this case, the evidence pointed only to actual knowledge or no knowledge" and that the government did not show he deliberately failed to make further inquiries with the intent to remain ignorant. Collier contends without such deliberate failures, the willful blindness instruction should not be given. However, "[a] willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." *Id.* (quoting *United States v. Gruenberg*, 989 F.2d 971, 974 (8th Cir. 1993)). Where there is sufficient evidence to support the instruction, "the jury may consider willful blindness as a basis for knowledge." *Id.* Here, Collier asserted a lack of knowledge and the evidence the government presented was sufficient to support a willful blindness instruction. Victims testified that Collier instructed them to perform "extra" services for money, he took the money they received for these acts, and he would watch customers grab the victims' private parts to ensure the customers were not undercover police. This evidence supports at least an inference of deliberate ignorance, if not knowledge. Given these facts, the district court did not abuse its discretion in instructing the jury it could find the knowledge element satisfied by a finding of willful blindness.

## C. Right to Counsel

Collier argues the district court erred in denying his motion to continue the trial for the purpose of obtaining new counsel and asserts his waiver of counsel was therefore involuntary. We review this issue for abuse of discretion. *United States v. Buck*, 661 F.3d 364, 372 (8th Cir. 2011). A criminal defendant is not entitled to an

attorney of his choosing. *Id*. at 372. And "last minute requests to substitute counsel must not be allowed to become a tactic for delay." *United States v. Cordy*, 560 F.3d 808, 816 (8th Cir. 2009) (quoting *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992)). Collier claims that his attorney's remark, "I end up so distracted that I'm missing things," suggests he was not prepared. However, this remark is quoted out of context. His attorney explained to the court he was distracted by Collier's behavior during trial and consequently was missing the witnesses' testimony. Collier did not request a continuance for the purpose of obtaining new counsel until the third day of the trial (even though a week before the trial Collier moved for continuance so he could act as co-counsel). Therefore, the district court did not abuse its discretion by denying Collier's motion to continue.

While we review de novo a district court's decision to allow a defendant to proceed pro se, *United States v. Turner*, 644 F.3d 713, 720 (8th Cir. 2011), the record clearly establishes Collier voluntarily waived his right to counsel under the Sixth Amendment. A defendant's "decision to represent himself [will not be] rendered involuntary simply because the court required him to choose between qualified counsel and self-representation." *Buck*, 661 F.3d at 373 (quoting *United States v. Mentzos,* 462 F.3d 830, 839 (8th Cir. 2006)). Multiple *Faretta*[6] hearings were held where the court repeatedly warned Collier of the dangers in proceeding pro se, but Collier maintained a desire to represent himself on each occasion. There was no "Hobson's choice" since Collier's counsel was prepared to try the case. Although Collier's counsel wondered how long he could continue doing "these kind of long trials" and this case had "taken way more time" than all but one of his previous cases, he stated he was prepared and ready to go. As there is no challenge to the district

---

[6]*Faretta v. California*, 422 U.S. 806, 835 (1975) (requiring a hearing following a request to proceed pro se to ensure the defendant is "knowingly and intelligently" waiving counsel and is informed of the "dangers and disadvantages of self-representation").

court's conduct of the *Faretta* hearings, Collier's waiver of his Sixth Amendment right to counsel was not involuntary.

## D. Other Alleged Trial Errors

Collier argues the district court committed a number of other errors at trial, including: failing to take remedial steps after a violation of a sequestration order, improperly excluding evidence, violating his due process rights when the court seized his computer, and showing judicial bias. These alleged errors are reviewed for abuse of discretion. *See Akins v. Knight,* 863 F.3d 1084, 1086 (8th Cir. 2017) (reviewing recusal decisions); *Buck*, 661 F.3d at 372 (reviewing a denial of a request for substitute counsel); *United States v. Camacho*, 555 F.3d 695, 702 (8th Cir. 2009) (reviewing sequestration orders); *United States v. Elbert*, 561 F.3d 771, 775 (8th Cir. 2009) (reviewing evidentiary rulings); *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 569 (8th Cir. 2008) (reviewing discovery matters). Collier also argues there was insufficient evidence to support convictions on two of his sex-trafficking counts, and we review this issue de novo. *United States v. Paul*, 885 F.3d 1099, 1101 (8th Cir. 2018). We turn to the alleged discretionary errors first.

### 1. *Sequestration Order*

Collier argues the government violated the district court's sequestration order and failed to take corresponding remedial steps when a government witness and the government's designated representative allegedly talked to a third government witness, Victim 3, during a break in the latter's direct testimony. While Federal Rule of Evidence 615 authorizes the district court to sequester witnesses, "sequestration orders . . . do not forbid all contact with all trial witnesses at all times," unless otherwise specified. *United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012). Even if Collier could prove the government violated the sequestration order, Collier

has not shown he was actually prejudiced as a result. *See United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991) ("We will only reverse" a district court's failure to remedy a party's violation of a sequestration order "if evidence of clear prejudice indicates the trial court's ruling was an abuse of discretion"). While Collier argues Victim 3's testimony changed tracks after the break, the record contradicts this argument. Victim 3's testimony before and after the break concerned Collier's abusive treatment toward her for failing to meet his standards and does not indicate her conversations with government officials prejudiced Collier. *Cf. id.* ("There was no showing made that the contact resulted in the tailoring of witness testimony to that of earlier witnesses or the development of less than candid testimony which Rule 615 seeks to prevent."). Therefore, the district court did not abuse its discretion in refusing to find a violation of the sequestration order.

### 2. *Exclusion of Evidence*

Collier asserts the district court improperly excluded evidence regarding Victim 2's previous involvement in prostitution. However, Rule 412 and previous Eighth Circuit precedent forecloses this argument. *See* Fed. R. Evid. 412; *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) (holding a "victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex"). Under Rule 412 and *Roy*, the district court properly excluded this evidence.

### 3. *Due Process*

Collier intermittently represented himself throughout the course of the trial. He claims he was denied due process in that his ability to cross examine witnesses was impaired when the district court seized his computer during trial. We conclude

the district court did not abuse its discretion. The computer was only seized after the court became aware Collier was using the computer to record witness testimony. Due to allegations of witness tampering[7] and threatening of witnesses, the court reasoned the witness's "safety may be in jeopardy." After the seizure, the court made arrangements for Collier to access e-discovery files on his standby counsel's computer and on his own hard drive in the presence of a marshal. Further, Collier has not shown how the district court's action impeded his ability to examine witnesses. *See United States v. Kind*, 194 F.3d 900, 905 (8th Cir. 1999) (finding a pro se defendant's due process rights were not violated because the defendant could not show his defense at trial was prejudiced). The district court properly balanced those interests here and did not abuse its discretion in seizing Collier's computer.

### 4. *Judicial Bias*

Collier argues the district court erred in denying a motion for mistrial and not recusing himself from the sentencing proceeding after Collier alleged judicial bias. To support the bias claim, Collier cites moments in the transcript where the district court "was speaking harshly to Collier." However, in *Liteky v. United States*, the Supreme Court held "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." 510 U.S. 540, 555 (1994). An opinion that derives from an "extrajudicial source" or reflects favoritism or antagonism to such a high degree that makes "fair judgment impossible" could support a bias challenge. *Id.* However, *Liteky* specifically states "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Id.* at 555–56. Here, the judge's comments, at most, fall under the category of impatience, dissatisfaction, and annoyance. Following a comment about Collier's case being

---

[7]A witness tampering charge was included in the second indictment, but the jury found Collier not guilty of that charge.

"stupid" the Judge apologized and stated he had lost his patience and was frustrated. Collier provides no evidence the district court's opinion derives from an extrajudicial source, and the comments were not to such a degree that would make fair judgment impossible. Therefore Collier's judicial bias claim fails.

### 5. *Sufficiency of Evidence*

Collier claims there was insufficient evidence to support convictions for Counts Five (sex trafficking of Victim 4, a minor) and Six (sex trafficking of Victim 5). In reviewing this issue de novo, we "view[] the evidence in the light most favorable to the jury's verdict, resolv[e] conflicts in the government's favor, and accept[] all reasonable inferences that support the verdict." *Paul*, 885 F.3d at 1101 (quoting *United States v. Tillman*, 765 F.3d 831, 833 (8th Cir. 2014)).

As to Count Five, sex trafficking of a minor, Collier argues there was insufficient evidence because the victim said she never actually engaged in commercial sex. However, this court has previously rejected an identical argument, explaining that 18 U.S.C. § 1591(a) "criminalizes knowingly undertaking activities, such as harboring and transporting a minor . . . knowing that a person under the age of eighteen will be caused to engage in a commercial sex act." *Paul*, 885 F.3d at 1103. As the statute requires knowing only that a person *"will be caused to engage in a commercial sex act"* at some point in the future, the fact the victim never actually engaged in commercial sex is irrelevant. 18 U.S.C. § 1591(a). Therefore, there was sufficient evidence supporting Collier's conviction for sex trafficking a minor under Count Five.

As to Count Six, Collier notes Victim 5 testified she engaged in commercial sex voluntarily. However, multiple pieces of evidence show Collier used physical force against Victim 5 to cause her to engage in commercial sex including: a client's

testimony that Victim 5 showed up with a black eye, the victim's own text messages to Collier asking him not to beat her up because she had more money for him, jail calls from Collier ordering her to continue prostitution activities to help fund his jail account, and jail calls Collier made to his brother telling him to keep tabs on Victim 5 and beat her up if necessary. The jury found Victim 5's personal testimony to the contrary to be incredible, and findings as to witness credibility are virtually unassailable on appeal. *United States v. Jones*, 600 F.3d 985, 990 (8th Cir. 2010). Therefore, there was sufficient evidence to support the jury's conviction on Count Six.

### III. Conclusion

For the reasons set forth herein, we affirm.

_____