# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3807
_____

United States of America,

*Plaintiff - Appellee,*

v.

Richard James Jackson,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 23, 2017
Filed: August 10, 2017

_____

Before COLLOTON and BENTON, Circuit Judges, and GERRARD,[1] District Judge.

_____

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, sitting by designation.

COLLOTON, Circuit Judge.

Richard Jackson appeals an order of the district court[2] denying his motion to suppress evidence obtained during a search of his cellular telephone. The search occurred while Jackson was serving a term of supervised release and residing at the Fort Des Moines Community Correctional Facility. Because we conclude that Jackson had no legitimate expectation of privacy in the cell phone, and the government has substantial interests that justify the intrusion, we affirm.

In 2013, Jackson pleaded guilty to failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). The district court sentenced him to 21 months' imprisonment, followed by five years of supervised release. Jackson's conditions of supervised release provided that he "shall submit to a search of his person, residence, adjacent structures, office or vehicle, conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based on reasonable suspicion of contraband or evidence of a violation of a condition of release." The judgment, as later modified without objection, also required that Jackson "reside, participate, and follow the rules of the residential reentry program . . . for up to 120 days."

On February 27, 2015, Jackson began his term of supervised release at the Fort Des Moines Community Correctional Facility, a residential reentry program. The Facility staff provides residents with a Resident Manual that defines the rules governing their conduct. These rules prohibit possession of cell phones in the Facility. Residents may store a cell phone in a locker at the entrance, but no cell phones are permitted beyond that point.

---

[2]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa, adopting the report and recommendation of the Honorable Helen C. Adams, Chief Magistrate Judge, United States District Court for the Southern District of Iowa.

The regular practice of the Facility is for staff to read these rules to residents when they begin the reentry program. When a new resident on federal supervised release, like Jackson, first meets with his intake counselor, the counselor again notifies him of the rules. Multiple signs inside and outside the Facility notify all persons that any item brought onto the Facility's premises is subject to search.

On March 16, a probation officer confiscated Jackson's cell phone after he found Jackson with the device in violation of the Facility's rules. The officer released the cell phone to Jackson without searching it, but warned him that the cell phone would be confiscated and searched if Jackson violated the rule a second time.

Less than a week later, on March 21, a Facility staff member found Jackson's cell phone in the possession of another resident. The staff member confiscated the cell phone. A residential officer, charged with maintaining the orderly and secure operation of the Facility, then confirmed that it was Jackson's cell phone and asked him for the passcode. Jackson provided the passcode, and the officer informed Jackson that he was going to search the phone. After entering the passcode, the residential officer discovered many pornographic images and "inappropriate sites" on Jackson's Internet history. A probation officer who worked at the Facility then searched the device and discovered pornographic videos and images.

After learning of the inappropriate content found on Jackson's cell phone, Jackson's supervising probation officer visited the Facility and searched Jackson's phone. While searching Jackson's Internet history, the probation officer found pornographic websites, including one that appeared to depict underage females. Jackson admitted that another person sent him approximately ten pictures of child pornography, which Jackson said that he deleted. The government later secured a warrant to search the cell phone. After a forensic examination, investigators discovered thirty-seven images of child pornography.

A grand jury charged Jackson with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), based on the images found on Jackson's cell phone. Jackson moved to suppress the evidence obtained from the search of his cell phone. He argued that the warrantless search violated his rights under the Fourth Amendment. The government opposed the motion, arguing that the officers had reasonable suspicion to search the cell phone. At the suppression hearing before a magistrate judge, the government reiterated that the officers had reasonable suspicion to search the cell phone. Alternatively, the government urged that suspicion was unnecessary, because Jackson had no reasonable expectation of privacy in his cell phone while he was at the Facility.

In a report and recommendation, the magistrate judge concluded that the search was reasonable because the officers had reasonable suspicion to believe that the cell phone contained evidence of criminal activity. The district court adopted the magistrate judge's report and recommendation. Jackson subsequently entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress. The district court later imposed sentence, and this appeal followed.

In their opening briefs, the parties debated whether the officers had reasonable suspicion to search Jackson's cell phone. After oral argument, however, the court requested supplemental briefing on the antecedent question of whether the government was required to establish any suspicion at all to search the device. Having now considered the matter, we conclude that Jackson did not have an expectation of privacy in his cell phone that society would recognize as legitimate, and that the government had substantial interests that justified the search of Jackson's cell phone. Accordingly, the Fourth Amendment did not prohibit the officers from examining the contents of Jackson's device.

In *Samson v. California*, 547 U.S. 843 (2006), the Court concluded that the Fourth Amendment did not forbid a police officer from conducting a suspicionless

search of a parolee. In concluding that the search was reasonable, the Court assessed the degree to which the search intruded on the parolee's privacy and furthered legitimate government interests. *Id.* at 848. The Court explained that parole is "an established variation on imprisonment," and that "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 850 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). The parolee in *Samson* was unambiguously aware that one condition of his parole was that he must submit to suspicionless searches by a peace officer at any time. Under those circumstances, the Court concluded that the parolee "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. The Court further observed that the State's substantial interests in reducing recidivism, and in promoting reintegration and positive citizenship by parolees, justified intrusions on privacy that would not otherwise be allowed under the Fourth Amendment. *Id.* at 853.

It follows from *Samson* that the search of Jackson's cell phone was permissible under the Fourth Amendment. Supervised release is a "form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (internal quotation mark omitted). This punishment is "meted out in addition to, not in lieu of, incarceration." *Samson*, 547 U.S. at 850 (quoting *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002)). We have said that supervised release is a more severe punishment than parole and probation, and involves "the most circumscribed expectation of privacy." *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016) (per curiam).

Like the parolee in *Samson*, Jackson was on clear notice that he was subject to the suspicionless search at issue. Although the judgment in Jackson's criminal case did not include a blanket condition that he must submit to suspicionless searches, he was required to reside at the residential facility and to follow the rules of the Facility and the reentry program. Jackson signed a form consenting to these conditions and

agreeing to abide by them. Two unambiguous rules of the Facility, expressed to Jackson on multiple occasions, were that a resident cannot possess a cell phone inside the Facility, and that any property possessed within the Facility is subject to search. Given Jackson's diminished expectation of privacy as a supervised releasee, and the clear notice that his cell phone was subject to search, Jackson did not enjoy an expectation of privacy in his cell phone that society would recognize as legitimate. *Accord United States v. Huart*, 735 F.3d 972, 975-76 (7th Cir. 2013). The government's action here also furthered substantial interests in preventing recidivism and facilitating an offender's reentry into the community. These interests justified examining property that Jackson brought into the Facility against the rules.

Jackson argues that *Riley v. California*, 134 S. Ct. 2473 (2014), demonstrates that the search was unconstitutional. *Riley* held that a warrant generally is required before an officer can lawfully search the information on a cell phone that is seized incident to an arrest. *Id.* at 2493. But *Riley* addressed privacy interests of an arrestee, not the circumscribed interests of an offender serving a term of supervised release. *Riley* also reasoned that the search of a cell phone did not further the government's post-arrest interests in preventing destruction of evidence and protecting officers; the decision did not address the government's interests in preventing recidivism by a supervised releasee and facilitating an offender's reentry into the community. Where a supervised releasee violates the rules of a reentry facility by possessing a cell phone despite warnings that it is subject to search, *Riley* is not controlling. The releasee's diminished expectation of privacy and the substantial government interests furthered by the search of the device make the intrusion permissible.

For these reasons, we conclude that the search of Jackson's cell phone did not violate the Fourth Amendment under the circumstances presented here. The judgment of the district court is affirmed.

_____