RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-3153

JASON FLETCHER,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:17-cr-00139-2—Susan J. Dlott, District Judge.

Argued: May 5, 2020

Decided and Filed: October 26, 2020

Before: COLE, Chief Judge; BATCHELDER and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Manuel B. Russ, Nashville, Tennessee, for Appellant. Megan Gaffney, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Manuel B. Russ, Nashville, Tennessee, for Appellant. Megan Gaffney, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

STRANCH, J., delivered the opinion of the court in which COLE, C.J., joined. BATCHELDER, J. (pp. 14–16), delivered a separate dissenting opinion.

—————————

**OPINION**

—————————

JANE B. STRANCH, Circuit Judge.  This case arises at the intersection of two branches of Fourth Amendment law—one governing the traditional balancing of privacy and governmental interests and the other addressing searches of the digital content of cell phones.  In short, the revolution in digital capacity of cell phones has shifted the balance between individual privacy and governmental interests.  This case involves the decision of Jason Fletcher's probation officer to conduct a phone search because he was carrying two cell phones.  The search revealed child pornography.  Fletcher appeals the district court's denial of his motion to suppress evidence found on his phone, as well as the resolution of several sentencing issues.  Because the probation officer did not have reasonable suspicion to search Fletcher's cell phone and Fletcher's probation agreement did not authorize the search, we **REVERSE** the district court's denial of his motion to suppress, **VACATE** Fletcher's conviction and sentence, and **REMAND** this case for further proceedings.

## I. BACKGROUND

In 2013, Fletcher was convicted of importuning a minor in violation of Ohio Revised Code § 2907.07(B), sentenced to five years' probation, and required to register as a sex offender.  The terms of probation prohibited him from contacting the victim of his offense, contacting any minors unsupervised, and possessing any kind of pornography.  The terms also contained search specifications:  Fletcher "[a]greed to a search without warrant of [his] person, [his] motor vehicle or [his] place of residence by a Probation Officer at any time."

During a routine visit with his probation officer, the officer noticed that Fletcher had two phones.  The officer stated that he was going to search the phones and observed that Fletcher responded nervously and began looking through one of them.  Fletcher told the officer that this personal phone operated only on a wi-fi network, and that the second phone belonged to a relative and was for work.  Believing that Fletcher was deleting the phone's contents, the officer took the phone and requested the passcode, which Fletcher claimed he did not remember.

Fletcher later unlocked the phone by fingerprint recognition, and the officer, searching through the phone, saw an image of child pornography.

The officer turned off the phone and contacted a Warren County detective, Brandi Carter, who sought, obtained, and executed a warrant to search the phone. The phone contained child pornography that had been downloaded from the internet and that had been filmed by the phone itself. Carter forwarded the videos filmed on the phone to federal agents for investigation and separately pursued state charges against Fletcher for the child pornography downloaded from the internet. For the downloaded images, Fletcher was charged in state court with multiple counts of pandering sexually oriented matter involving a minor, in violation of Ohio Revised Code § 2907.322; he pled guilty and was sentenced to ten years' imprisonment.

For the videos filmed on the phone, Fletcher was charged in federal court with conspiracy to produce child pornography and production of child pornography. He filed a motion to suppress the evidence recovered from his cell phone, which the district court denied. At a bench trial, the court found Fletcher guilty of both conspiracy to produce child pornography and production of child pornography. He was sentenced to 35 years in prison, to run concurrently with his 10-year state sentence for pandering, followed by a lifetime of supervised release. Fletcher now appeals the district court's denial of his motion to suppress, as well as the court's resolution of various sentencing issues. We begin with the motion to suppress.

## II. ANALYSIS

For a motion to suppress, we review legal questions de novo and factual findings for clear error. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008).

Fletcher argues that his probation officer lacked reasonable suspicion to search his cell phone without a warrant. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). And "reasonableness generally requires the obtaining of a judicial warrant." *Id.* at 382 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S.

646, 653 (1995)). If there is no warrant, then "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Id.*

In *Riley v. California*, the Supreme Court addressed how the data capacity of modern cell phones intersects with individual privacy concerns recognized by the Fourth Amendment and set out guiding principles for cell phone searches. It held that "a warrant is generally required" for searching a cell phone, including phones seized incident to arrest. *Id.* at 401. But "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Id.* at 401–02. The Court explained that "exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury." *Id.* at 402. "The critical point is that, unlike the search incident to arrest exception, the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id*.

Applying these principles, we have explained that the Fourth Amendment requires us to "determine whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Lichtenberger*, 786 F.3d 478, 487 (6th Cir. 2015) (quoting *Riley*, 573 U.S. at 385). Noting *Riley's* explanation that neither officer safety nor preservation of evidence "has much force with respect to digital content on cell phones," we concluded that when the belonging being searched "is a device like a cell phone, the balance between governmental and privacy interests shifts enormously." *Id.* (quoting *Riley*, 573 U.S. at 386). We relied on *Riley's* instructions for balancing the interests involved in the arrest context:

> On the government interest side, [we have previously] concluded that the two risks identified . . . —harm to officers and destruction of evidence—are present in all custodial arrests. There are no comparable risks when the search is of digital data. In addition, [we have] regarded any privacy interests retained by an individual after arrest as significantly diminished by the fact of the arrest itself. Cell phones, however, place vast quantities of personal information literally in the hands of individuals. A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in [our prior cases].

*Id.* (alterations in original) (quoting *Riley*, 573 U.S. at 386).

Individuals subject to state supervision, however, may have lesser privacy interests than the general public. Two Fourth Amendment doctrinal frameworks govern "the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007). One arises from the Supreme Court's decision in *Griffin v. Wisconsin*, 483 U.S. 868, 873–80 (1987), and the other from the Court's decision in *United States v. Knights*, 534 U.S. 112, 118–22 (2001). The district court employed only the *Griffin* framework in reaching its conclusion. We will consider both.

## A.    *Griffin* **Framework**

In *Griffin*, the Supreme Court created a two-part inquiry to evaluate the reasonableness of a warrantless search of a probationer's home conducted under a specific statute or regulation. *See* 483 U.S. at 873–80. "First, courts examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement. If so, courts then analyze whether the facts of the search itself satisfy the regulation or statute at issue." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003) (citations omitted).

Here, the relevant Ohio statute provides that:

> during the period of a felony offender's nonresidential sanction, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, . . . another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest . . . if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of . . . the felony offender's nonresidential sanction.

Ohio Revised Code § 2951.02(A). The district court concluded that this statute satisfies the reasonableness requirement, and on appeal the parties do not dispute that holding. We agree. *See United States v. Goliday*, 145 F. App'x 502, 505 (6th Cir. 2005) (finding reasonable  nearly identical wording in a statute); *see also Griffin*, 483 U.S. at 872 (finding reasonable a regulation that authorized warrantless search of a probationer's home where "reasonable grounds" existed).

The parties dispute, however, whether there was reasonable suspicion for the probation officer to open and view material in Fletcher's cell phone. To conduct that search, Ohio requires that the probation officer have "reasonable grounds" to believe that Fletcher was either in violation of the law or of the conditions of his probation. Ohio Revised Code § 2951.02(A); *see Goliday*, 145 F. App'x at 505 (treating reasonable grounds as synonymous with reasonable suspicion for Fourth Amendment purposes). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

When Fletcher visited his probation officer, the officer noticed that Fletcher was carrying two cell phones and told him that he was going to search the phones. Fletcher responded nervously, stating that he did not have the passcode for one of the phones and going through the other phone in what the officer believed was an attempt to delete its contents. The officer then demanded that Fletcher hand over the phone and used Fletcher's fingerprint to unlock it. The officer found a pornographic image of a child on the phone, stopped his search, and called for Fletcher to be arrested for a probation violation.

The district court determined that a citizen's possession of two phones alone may not satisfy reasonable suspicion, "although it is a close call for a probationer convicted of a sex offense." *United States v. Fletcher*, No. 1:17-cr-139(2), 2018 WL 1863825, at *4 (S.D. Ohio Apr. 18, 2018). It nevertheless agreed with the Government's argument that Fletcher's behavior *after* the probation officer demanded to search his cell phones may serve as the basis for reasonable suspicion to *initiate* the search. *Id.*

Reasonable suspicion, however, requires that the Government show "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Payne*, 181 F.3d at 788 (quoting *Cortez*, 449 U.S. at 417–18). It "requires more than a mere hunch." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (quoting *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)). We therefore begin with whether the probation officer had an objective basis for suspecting Fletcher of criminal activity when he told Fletcher he was going to search the two

phones and demanded that Fletcher hand them over. The dissent focuses on the fact that Fletcher had two cell phones, which it argues justified reasonable suspicion in light of Fletcher's criminal history and probation conditions. But the events described amount to no more than a "mere hunch." *Id.* Possession of two cell phones, alone, is not a sufficient basis to suspect criminal activity. Even when we have identified possession of multiple cell phones as relevant to reasonable suspicion, we have called it "weak" and required "more substantially suspicious factors" and those cases involved drug offenses, which are unrelated to the offense for which Fletcher was on probation. *United States v. Townsend*, 305 F.3d 537, 544 (6th Cir. 2002); *see also Nykoriak v. Wileczek*, 666 F. App'x 441, 444 (6th Cir. 2016); *United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012) (employing similar logic on a challenge to the sufficiency of the evidence at trial). In a case involving child pornography—again, not the offense for which Fletcher was on probation—the Eleventh Circuit relied on multiple other indicia in addition to possession of multiple phones when finding reasonable suspicion. *United States v. Touset*, 890 F.3d 1227, 1237 (11th Cir. 2018).

This approach makes sense. There are countless, innocent reasons for having two cell phones, and possessing more than one cell phone is a practice common in the general public. An individual may have a separate phone for: work use only (or may be required to carry an employer-issued phone as a job responsibility); as a backup in case of emergencies; for additional electronic storage; or because a phone can be less expensive than a computer as a separate device for internet access (such as for remote classes for children). *See United States v. Stepp*, 680 F.3d 651, 665–66 (6th Cir. 2012) (explicitly declining to hold that a less expensive model of cell phone is a strong indicator of criminal activity). In this way, possessing multiple phones is analytically similar to, for instance, possessing multiple cars: though they can potentially be used in criminal activities, there are a myriad of legitimate, legal uses as well. So, the fact of possession alone does not give rise to reasonable suspicion.

Fletcher's conviction of a sex offense can, as the Government and the dissent argue, add to the calculus. But Fletcher's offense was for importuning and did not involve a cell phone, nor did he have a history of possessing child pornography. And, despite the Government's arguments, the fact that Fletcher's probation agreement prohibited him from possessing child

pornography cannot justify a search where the officer lacked reasonable suspicion to believe that Fletcher's phones contained child pornography at the time she announced she would search the phones. *See Payne*, 181 F.3d at 788. The fruits of a search cannot serve as the justification for initiating that search.

The Government next contends, and the dissent argues, that Fletcher's behavior in response to the officer's demands supports a finding of reasonable suspicion. The Supreme Court addressed whether an officer can create exigency or the circumstances that give rise to reasonable suspicion to justify a warrantless search in *Kentucky v. King*, 563 U.S. 452 (2011). It determined that "the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense." *Id.* at 462. And, where an officer created exigency by "engaging or threatening to engage in conduct that violates the Fourth Amendment," a warrantless search, even "to prevent the destruction of evidence," may be unreasonable. *Id.*

In *Riley*, the Supreme Court established that searching a cell phone generally requires a warrant unless some exception, such as exigent circumstances, applies in that particular case. 573 U.S. at 401–02. At the time the officer told Fletcher he was going to search Fletcher's phones, there were no exigent circumstances or other reasonable grounds to support a finding that Fletcher was violating his legal obligations. The officer's request to search the phones at that point was unreasonable, and that unreasonable behavior created the exigency the Government now seeks to justify the subsequent search of the phone. Because the probation officer "threaten[ed] to engage in conduct that violates the Fourth Amendment," *id.*, which created the response by Fletcher that is alleged to be an exigent circumstance, the district court erred in concluding that the officer had reasonable suspicion to search the cell phone when he took the phone and searched it.

The Government next argues, and the dissent agrees, that reasonable suspicion existed because Fletcher is "a registered sex offender on probation, with a history of soliciting a minor, and with probation conditions barring him from possessing any pornography and from making contact with children." But, again, Fletcher was convicted of importuning a minor and there was nothing to suggest that he had or was creating child pornography. The Government responds

that the terms of the probation agreement allow searches of Fletcher's "person," "motor vehicle," or "place of residence" without showing particularized suspicion. It argues that, even though the terms of probation do not specify the search of a cell phone, they can be understood to authorize such a search, and any mistake by the probation officer in interpreting the terms was a reasonable mistake of law. *See Heien v. United States*, 574 U.S. 54, 60 (2014) (holding "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition"). But, as the Government acknowledges, the terms of Fletcher's probation do not specifically authorize the search of other tangible items on his person, including cell phones, and *Riley* clarified that the search of a person is treated separately from the search of a cell phone. *See* 573 U.S. at 373–86. The probation officer's interpretation of the probation terms as authorizing the search of a cell phone is not objectively reasonable.

Because the search of Fletcher's phones does not "satisfy the regulation or statute at issue," the Government does not meet the *Griffin* test. *Loney*, 331 F.3d at 520.

### B.     *Knights* Framework

Under the *Knights* framework, the Government's arguments fare no better. In *Knights*, the Supreme Court determined that a court must evaluate the reasonableness of a warrantless search "in light of the totality of the circumstances 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Herndon*, 501 F.3d at 690 (quoting *Knights*, 534 U.S. at 119).

As the Government correctly points out, Fletcher's status as a probationer reduces his interest in privacy. *See Knights*, 534 U.S. at 119 (quoting *Griffin*, 483 U.S. at 874) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'") (cleaned up). But "while the privacy interest of a probationer has been 'significantly diminished,' it is still substantial." *See United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016) (citation omitted) (quoting *Knights*, 534 U.S. at 120). As a probationer, Fletcher's expectation of privacy is greater than that of a parolee, *see Samson v. California*, 547 U.S. 843, 850 (2006), and of someone on supervised release, *see United States v. Sulik*,

807 F. App'x 489, 493 (6th Cir. 2020). In addition to Fletcher's status as a probationer, in evaluating his interests we also consider "the clarity of the conditions of probation, and the nature of the contents of a cell phone." *Lara*, 815 F.3d at 610.

The Supreme Court's decision in *Knights* clarified that a probationer's reasonable expectation of privacy is "significantly diminished" when the terms of the probation agreement "clearly expressed the search condition" so that the probationer "was unambiguously informed." 534 U.S. at 119. The Government relies on *Knights* and our decision in *United States v. Tessier*, which held that a suspicionless search of a probationer's residence was reasonable given the terms of the probation agreement. 814 F.3d 432, 435 (6th Cir. 2016). In both cases, the officers searched a residence and the terms of the probation agreement "clearly expressed the search condition." *Knights*, 534 U.S. at 119; *Tessier*, 814 F.3d at 433. The terms of Fletcher's probation agreement provide that he "agree[d] to a search without warrant of [his] person, [his] motor vehicle or [his] place of residence by a Probation Officer at any time." None of these terms clearly or unambiguously includes a cell phone. *See Lara*, 815 F.3d at 611 (reviewing more expansive probation terms, which allowed for warrantless searches of "property," and determining that the terms did not include the search of a cell phone).

Turning to the nature of cell phones, *Riley* notes the quantity of information contained in modern cell phones, explaining that "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." 573 U.S. at 396–97. The Supreme Court in *Riley* recognized that the search of a cell phone is unique and— as compared to the search of a home—infringes far more on individual privacy. As a result, we cannot assume that provisions in Fletcher's probation agreement authorizing the search of his person or place of residence also authorize the search of his cell phones.

The Government's interests here include ensuring that Fletcher successfully completes probation and refrains from engaging in criminal activity, and, when the probation officer announced that he would search Fletcher's phone, preventing Fletcher from destroying incriminating evidence. These interests are adequately addressed by securing the cell phone,

without searching its contents.  As *Riley* explained, "once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone."  *Id.* at 388.  There is no suggestion that the officer here experienced any safety risk from the physical aspects of the phone.  "Digital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape. . . . Once an officer has secured a phone and eliminated any potential physical threats, however, data on the phone can endanger no one."  *Id.* at 387.  And if Fletcher were engaging in criminal activity, the officer could determine that quickly by taking the course of action *Riley* prescribes—"get a warrant"—and then searching the phones' contents.  *Id.* at 403.

In sum, balancing Fletcher's expectation of privacy with the legitimate governmental interests, the search of Fletcher's cell phone was unreasonable.

The Government relies on out-of-circuit cases related to probation or other post-release control that miss the mark.  Take, for example, *United States v. Collier*, 932 F.3d 1067 (8th Cir. 2019), where the Eighth Circuit held that a defendant on supervised release did not have a reasonable expectation of privacy in his cell phone.  *Id.* at 1073–74.  First, comparing supervised release to probation, "those on supervised release have an even further reduced expectation of privacy because supervised release 'is a more severe punishment than parole and probation.'" *See Sulik*, 807 F. App'x at 493 (quoting *United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017)).  More importantly, the defendant in *Collier* had been arrested for violating the terms of his supervised release immediately before the phone search.  932 F.3d at 1073.  *Collier* is distinguishable and not binding on our court.

The Government also cites *United States v. Hathorn*, 920 F.3d 982 (5th Cir. 2019), where the Fifth Circuit upheld the district court's imposition of a special condition allowing searches of the cell phone of an individual on supervised release.  *Id.* at 986–87.  That case exemplifies what did not occur in Fletcher's case.  And it reveals a simple solution.  Fletcher's probation agreement could have but did not authorize the search of his cell phones or digital devices.

Under both the *Griffin* and *Knight* frameworks, the Government fails to demonstrate that its original search of Fletcher's cell phone was reasonable.

**C.** **Exclusionary Rule**

We next consider whether the exclusionary rule applies. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009).

The Government contends that the officer's initial search was not sufficiently culpable because he was not reckless or grossly negligent. We find that his conduct was deliberate. The moment Fletcher walked in the door to meet with his probation officer and the officer noticed that he had two cell phones, the officer demanded to search his phones. Fletcher's conditions of probation did not clearly or unambiguously allow for such a search and the probation officer lacked reasonable suspicion to initiate that search. *See Knights*, 534 U.S. at 119; *Tessier*, 814 F.3d at 433. If exigency did exist in this case, the officer's conduct created it, which cannot support a finding of reasonable suspicion. *See King*, 563 U.S. at 462. Application of the exclusionary rule here will deter suspicionless searches of a probationer's cell phone post-*Riley* where the terms of a probation agreement do not authorize such a search. Application of the rule would also encourage the future inclusion in probation agreements of clear and unambiguous terms regarding the distinct category of cell phones.

The Government also contends that the exclusionary rule should not apply because the executing officers relied in good faith on the subsequently issued warrant. It relies on *United States v. McClain*, in which we refused to apply the exclusionary rule even though the warrant relied in part on evidence seized during an illegal, warrantless search. 444 F.3d 556, 566 (6th Cir. 2005). We did so because (1) "the officers who sought and executed the search warrants acted in good faith" and (2) "the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers' belief in the validity of the search warrants objectively reasonable." *Id*. We must determine whether "this is one of those unique cases in which the *Leon* good faith exception should apply despite an earlier Fourth Amendment violation." *Id.* at 565.

Detective Carter sought and obtained a warrant for Fletcher's phone that included a description of, and relied on in whole, the probation officer's conduct and initial search of the phone. The probation officer lacked reasonable suspicion when he first sought to search the phone and the terms of Fletcher's probation agreement did not clearly or unambiguously allow for the search of his phones. *See Knights*, 534 U.S. at 119; *Tessier*, 814 F.3d at 433. The Government's interests in ensuring that Fletcher did not destroy incriminating evidence or engage in unlawful activity were effectively satisfied when the phone was seized. A subsequent search of the phone, as demonstrated by *Riley*, required either a warrant or some exception to it. 573 U.S. at 401–02. Neither was present here. The facts surrounding the initial warrantless search were not close enough to the line of validity to fit within the confines of *McClain*. Having two phones does not give rise to reasonable suspicion, even for a probationer who has lesser privacy interests. Fletcher's probation terms did not allow for such a search, and, unlike *McClain*, the entirety of the warrant was based on the unlawful activity that gave rise to the Fourth Amendment violation. Detective Carter's reliance on the probation officer's conduct and initial search was not objectively reasonable. The exclusionary rule applies.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of Fletcher's motion to suppress, **VACATE** Fletcher's conviction and sentence, and **REMAND** this case for further proceedings.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. The majority opinion holds that Fletcher's probation officer did not have reasonable suspicion to believe that Fletcher's cell phone held evidence of a probation violation. Because I disagree, I respectfully dissent.

Fletcher was a 35-year-old sex offender with numerous prior convictions, including one for importuning oral sex from a 13-year-old girl. He was on probation when his 20-year-old niece told him that she was baby-sitting a two-year-old baby. Fletcher joined them and brought his cell phone, a handgun, and an open bottle of what he called "medicine." Fletcher and his niece sedated the baby with the "medicine" and then the niece held the semi-conscious to unconscious baby while Fletcher molested the baby and filmed it on his cell phone.

Later, at a probation check in, Fletcher's probation officer saw that Fletcher had two cell phones and asked to see them. Fletcher reacted "nervously," initially claimed that he did not have the pass codes, and then frantically tried to delete items from the phones. Eventually, he relented and consented to the request, using his fingerprint to grant the probation officer access to the contents. The probation officer immediately saw child pornography on the phone, which was a violation of Fletcher's probation, so she contacted a local police detective, who obtained a warrant, searched the phones, and found child pornography, some downloaded from the internet and some created on that phone and starring Fletcher molesting children. Based on the transfer of the images, the police officer referred the case to the local prosecutor for a pandering charge in state court. Fletcher entered a guilty plea, which led to a 10-year state-prison sentence.

Because of the uncertain venue of the production of the child pornography, the state referred the case to the federal prosecutor, who added conspiracy to produce child pornography, due to the niece's participation. Fletcher moved to suppress the evidence from his cell phone.

The district court assessed whether the probation officer had "reasonable grounds to believe" that Fletcher was violating his probation conditions, so as to justify the inquiry. The court found five pertinent facts: (1) Fletcher was on probation for a sex offense against a minor

that forbade him from contacting minors and from possessing child pornography; (2) Fletcher inexplicably had two phones; (3) Fletcher reacted nervously when asked about the phones; (4) Fletcher denied knowing the pass codes; and (5) Fletcher began to furtively access one of the phones in an apparent attempt to delete its contents. *United States v. Fletcher*, 2018 WL 1863825, at *4 (S.D. Ohio, Apr. 18, 2018). The court agreed with Fletcher that the possession of two phones, without more, "may not induce reasonable suspicion for an average citizen (although it is a close call for a probationer convicted of a sex offense) . . . [but that] Fletcher's behavior upon learning of the pending phone search certainly does induce reasonable suspicion." *Id.* Consequently, based on the totality of Fletcher's actions, the court denied his motion. *Id.*

On an appeal from a motion to suppress evidence, we review findings of fact for clear error and conclusions of law de novo. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). When the district court has denied the motion, we review the findings in the light most likely to support the district court's denial. *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009).

On appeal, Fletcher argues that the probation officer did not have reasonable suspicion to access his phones and that his suspicious actions could have been for innocuous reasons. The government says that Fletcher's behavior was suspicious under the totality of the circumstances and that it need not disprove every possible innocent explanation. Moreover, even accepting that two phones, without more, does not necessarily establish reasonable suspicion that he committed a crime, it would—and should—certainly trigger the probation officers' legitimate interest.

That is, even putting aside the child pornography—and the claim that there was no basis to suspect child pornography on the phones because Fletcher had not previously been convicted of child pornography—Fletcher was expressly forbidden from contact with minors as a direct consequence of his importuning conviction. That particular criminal history and associated probation restriction should cause Fletcher's probation officer—if she is doing her job—to suspect that one phone could be for contacting minors and the other to hide that misbehavior. As I see it, the probation officer had cause to ask Fletcher to see the phones and, based on his suspicious reactions to that request, she had reasonable suspicion that she would find evidence of a probation violation, or worse, on one or both of those phones after Fletcher gave her access.

Because I believe that the probation officer's inquiry into the two phones was reasonable—in fact, to be expected of a diligent probation officer—and because I believe that Fletcher's responses created reasonable suspicion that the phones contained incriminating evidence, I would hold that the search was permissible and would affirm the district court.

Therefore, I respectfully dissent.