In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2974

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY E. WOOD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:19-cr-00038 — **Damon R. Leichty**, *Judge.*

ARGUED SEPTEMBER 14, 2021 — DECIDED OCTOBER 21, 2021

Before SYKES, *Chief Judge*, and EASTERBROOK and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge.* Henry Wood was arrested for violating his parole. Midway through the arrest, parole agents found methamphetamine hidden underneath the back cover of his cellphone. An investigator later extracted the data from his cellphone, revealing child pornography. Wood moved to suppress the data, arguing the Fourth Amendment requires a

warrant before such a search. We disagree and affirm the district court's denial of Wood's motion to suppress.

**I**

Henry Wood served time in Indiana state prison for methamphetamine-related offenses. In 2018, he was released on parole under enumerated conditions. Any violation subjected him to "being taken into immediate custody."

Wood's parole release agreement required him to "report to [his] assigned supervising officer" as instructed. Wood also affirmed the following:

> I understand that I am legally in the custody of the Department of Correction and that my person and residence or property under my control may be subject to reasonable search by my supervising officer or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole.

About three months after being released, Wood violated his parole by failing to report to his supervising officer. The Indiana Parole Board issued an arrest warrant, and parole agents arrested Wood at his home in North Judson. One of the agents, Agent Gentry, secured Wood with wrist restraints and conducted a frisk search. During the frisk, Gentry noticed Wood repeatedly turning toward his cellphone, which was lying on a "junk pile." Gentry picked up the cellphone and handed it to Agent Rains. This upset Wood. He demanded that his cellphone be turned off and he began to physically resist Gentry. With the help of another agent, Gentry

restrained Wood against a nearby wall, and Wood "calmed down immediately."

Meanwhile, Rains felt something "lumpy" on the back of Wood's cellphone, so he removed the back cover and found a packet of a substance which Rains believed to be methamphetamine. Wood eventually admitted the substance was, in fact, methamphetamine. A later search of the home revealed syringes and other drug paraphernalia. Based on these findings, Wood was arrested for possession of methamphetamine and parole agents seized his cellphone as evidence.

Seven days after Wood's arrest, an investigator for the Indiana Department of Correction performed a warrantless search of Wood's cellphone by extracting its stored data. This search revealed child pornography. The investigator forwarded this information to a special agent of the Federal Bureau of Investigation, who obtained a search-and-seizure warrant for Wood's cellphone and its contents.

A federal grand jury indicted Wood for both receiving and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B). Before the district court, Wood moved to suppress the data extracted from his cellphone. He argued principally that the state investigator's warrantless search of his cellphone violated *Riley v. California*, 573 U.S. 373 (2014). The district court disagreed, holding that the search of Wood's cellphone complied with the Fourth Amendment. *United States v. Wood*, 426 F. Supp. 3d 560, 575 (N.D. Ind. 2019).

Following the denial of his motion to suppress, Wood entered a conditional guilty plea. *See* FED. R. CRIM. P. 11(a)(2). He pleaded guilty to the receiving charge in Count 1 of the indictment—Count 2 was dismissed—and he reserved the right to

appeal the district court's denial of his motion to suppress. This appeal followed.

## II

"When reviewing a district court's decision denying a motion to suppress evidence, we review the court's legal conclusions *de novo* and its factual findings for clear error." *United States v. McGill*, 8 F.4th 617, 621 (7th Cir. 2021).

The district court rejected Wood's argument that *Riley v. California* required law enforcement to obtain a search warrant before searching his cellphone. Instead, the court used the totality of the circumstances approach articulated in *United States v. Knights*, 534 U.S. 112 (2001), and *Samson v. California*, 547 U.S. 843 (2006), to conclude that the search of Wood's cellphone was reasonable under the Fourth Amendment. We affirm in both respects.

## A

Wood asks us to apply *Riley v. California* to parolees. The primary problem with this request is that *Riley* dealt with searches incident to a lawful arrest. The Supreme Court carefully tailored its analysis to that context and expressly recognized that "other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley*, 573 U.S. at 401–02. Under the Fourth Amendment, "what is reasonable depends on the context within which a search takes place." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).

Given the context-specific nature of the Fourth Amendment, *Riley* is not readily transferable to scenarios other than the one it addressed. Indeed, we have declined to apply *Riley* in two other contexts: consent searches and border searches. *See United States v. Wanjiku*, 919 F.3d 472, 483–85 (7th Cir.

2019) (border search); *United States v. Thurman*, 889 F.3d 356, 366 n.9 (7th Cir. 2018) (consent search).

To be sure, "the Supreme Court has recently granted heightened protection to cell phone data." *See Wanjiku*, 919 F. 3d at 484. But neither our research nor the parties' briefs reveal any circuit court decision extending a *Riley*-like rule to parolees—quite the opposite. *See United States v. Pacheco*, 884 F.3d 1031, 1043–44 & n.10 (10th Cir. 2018) (discussing *Riley*'s inapplicability in the parole context); *United States v. Johnson*, 875 F.3d 1265, 1273–76 (9th Cir. 2017) (holding that *Riley* did not require parole agents to obtain a warrant before searching a parolee's cellphone); *United States v. Jackson*, 866 F.3d 982, 985–86 (8th Cir. 2017) (same). Nevertheless, we take a fresh look.

The Supreme Court's "general Fourth Amendment approach" is to "examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment." *Samson*, 547 U.S. at 848 (cleaned up). Whether a search is reasonable is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

This balancing of interests sometimes generates categorical rules, like the search-incident-to-arrest exception addressed in *Riley*. Under that doctrine, law enforcement generally may conduct a warrantless search of an arrestee's person without "additional justification." *Riley*, 573 U.S. at 384 (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). Two governmental interests support this rule: officer safety and evidence preservation. *Id.* On balance, these interests

outweigh an arrestee's diminished expectation of privacy, justifying an exception to the rule that "reasonableness generally requires the obtaining of a judicial warrant." *See id.* at 382–84 (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)).

But the "ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Riley*, 573 U.S. at 381 (internal quotation marks omitted), so technological advancements may alter the contours of Fourth Amendment doctrine. *See, e.g.*, *Kyllo v. United States*, 533 U.S. 27, 35–36 (2001). *Riley* is illustrative. There, the Supreme Court held that cellphones fall outside the search-incident-to-arrest exception because the government's interests in officer safety and evidence preservation did not outweigh an arrestee's particular privacy interest in his cellphone. Both sides of the balancing test were affected by a cellphone's ability to store "vast quantities of personal information." *Riley*, 573 U.S. at 386.

*Riley* first noted that the expectation of privacy, though lowered by custodial arrest, was not eliminated. *Id.* at 392. Cellphones differed greatly, the Court observed, from physical items, like a "cigarette pack, a wallet, or a purse" because of their "immense storage capacity" which may contain "a revealing montage of the user's life." *Id.* at 393, 396. Therefore, an arrestee's privacy interest in his cellphone garnered more protection than, say, the cigarette pack found on the arrestee in *United States v. Robinson*. 414 U.S. at 236.

Regarding the government's twin interests of officer safety and evidence preservation, the Court noted that "[d]igital data stored on a cell phone cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape." *Riley*, 573 U.S. at 387. Officers retained the

ability to "examine the physical aspects of a phone to ensure that it will not be used as a weapon." *Id.* And though potential destruction of evidence presented a stronger justification for warrantless cellphone searches, the Court reasoned that physical possession of the phone, ability to turn off the device (or remove the battery), and the existence of signal-blocking devices provided the government with reasonable alternatives to a warrantless search. *Id.* at 388–91. *Riley*'s net result, then, was a carveout for cellphones to the search-incident-to-arrest exception, essentially reinstating the warrant requirement for searches targeting cellphone data.

## B

The Supreme Court's close attention to balancing interests means that *Riley* cannot be casually applied to other contexts. Instead, we must consider the privacy and governmental interests in the factual circumstances before us: a warrantless search of a parolee's cellphone conducted under the terms of the parole agreement. We take into account, of course, the Supreme Court's general emphasis on cellphone privacy in the modern era—and for that purpose *Riley* is instructive—but we do not attempt a full-scale doctrinal transplant.

For searches of parolees and probationers, two Supreme Court decisions set the stage. In *United States v. Knights*, the Court held that a warrantless search of a probationer's home based on reasonable suspicion satisfied the Fourth Amendment. 534 U.S. at 122. But *Knights* reserved the question of whether a suspicionless search would also satisfy the Fourth Amendment. *Id.* at 120 n.6. In *Samson v. California*, the Court answered a variation of that question in the affirmative, holding that a warrantless, suspicionless search of a parolee was reasonable under the Fourth Amendment. 547 U.S. at 857.

Under *Knights* and *Samson*, courts balance a parolee's privacy expectations, as shaped by state law, against the state's interests in reducing recidivism and promoting reintegration. *United States v. White*, 781 F.3d 858, 861–62 (7th Cir. 2015).

For example, we recently applied *Knights* and *Samson* to Wisconsin's equivalent of parole, extended supervision, in *United States v. Caya*, 956 F.3d 498 (7th Cir. 2020). Pursuant to state law, police officers searched the home of Caya, who was serving an extended supervision term. *Id.* at 500–01. Looking to *Samson*, this court concluded that an "offender on extended supervision has no greater expectation of privacy than a parolee. And Wisconsin's interest in rigorously monitoring offenders on extended supervision is just as compelling as the government's parole-supervision interests in *Samson*." *Id.* at 503. So we held that the search was constitutional. *Id.* Though *Caya* involved a home in Wisconsin and this case concerns a cellphone in Indiana, we apply the same framework. Here, Indiana, rather than Wisconsin, law informs the analysis. *See White*, 781 at 861.

Parolee status diminishes one's privacy expectations, *Samson*, 547 U.S. at 852, and Indiana courts have affirmed this principle, *State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015). Wood's parole agreement, authorized by IND. CODE § 11-13-3-4, reminded him that he was "legally in the custody of the Department of Correction" and explained that his "person and residence or property under [his] control may be subject to reasonable search[es]." Nothing in this provision indicates that a cellphone does not qualify as "property under [Wood's] control," and Wood does not make such an argument. Wood was unambiguously informed of his parole conditions, which permitted searches based on less than probable cause. So, any

privacy interest Wood retained in his cellphone was greatly diminished. *See Samson* 547 U.S. at 852.

Turning to the state's interests, we recognize that Indiana has an "overwhelming interest in supervising parolees." *Id.* at 853 (internal quotation marks omitted). Its goals of "reducing recidivism" and "promoting reintegration … warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* The district court noted Indiana's 34% recidivism rate for parolees within three years of release. *Wood*, 426 F. Supp. 3d at 574. It also highlighted the public safety concerns that accompany a high recidivism rate. *Id.* at 575 (discussing parole division operations discovering illegal firearms and large quantities of drugs). Indiana has a strong interest in supervising parolees, as did California in *Samson*.

Despite cellphones' ability to hold "vast quantities of personal information," *Riley*, 573 U.S. at 386, they do not, as a categorical matter, receive heightened protection under *Knights* and *Samson*. Unlike the governmental interests discussed in *Riley* (officer safety and evidence preservation), Indiana's governmental interests (reducing recidivism and promoting reintegration) apply equally to cellphone searches. As stated above, the interests in reducing recidivism and promoting reintegration are "overwhelming." And "the Fourth Amendment does not render the States powerless to address these concerns *effectively*." *Samson*, 547 U.S. at 854 (emphasis in original). First, parolees are "more likely to engage in criminal conduct than an ordinary member of the community." *Knights*, 534 U.S. at 121. The government's interest in discovering criminal activity applies no less when the evidence is data in a cellphone. By contrast, the government's interests in *Riley*—officer safety and evidence preservation—were less

compelling when the target of the search was cellphone data. Not so here. Reducing recidivism is an independent goal of the parole system, exclusive from those discussed in *Riley*, and it would be frustrated by imposing a warrant requirement because it would incentivize concealment of criminal activity. *See Knights*, 534 U.S. at 120–22.

Second, the government has an interest in "promoting reintegration and positive citizenship among probationers and parolees." *Samson*, 547 U.S. at 853. A supervisor must be able to obtain information about the supervisee. Transparency is key because "most parolees are ill prepared to handle the pressures of reintegration[,] [t]hus, most parolees require intense supervision." *Id.* at 854. Requiring a warrant for a search of a parolee's cellphone would hinder the state's efforts to rehabilitate offenders and reintroduce them to society. Identifying recalcitrance earlier rather than later is central to the parole system. This is why *Knights* and *Samson* permit warrantless searches with less than probable cause for probationers and parolees alike; it makes "eminent sense." *Id.*

Given Wood's diminished expectation of privacy and Indiana's strong governmental interests, the search of Wood's cellphone was reasonable. In reaching this decision, we align our law with that of the Eighth, Ninth, and Tenth Circuits. *See Pacheco*, 884 F.3d at 1044; *Johnson*, 875 F.3d at 1273; *Jackson*, 866 F.3d at 985.

Resisting this conclusion, Wood relies on two other cases, *United States v. Fletcher*, 978 F.3d 1009 (6th Cir. 2020), and *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016). Both are distinguishable. *Fletcher* and *Lara* involved probationers, not parolees. This matters because "on the continuum of state-imposed punishments[,] … parolees have fewer expectations of

privacy than probationers, because parole is more akin to im-
prisonment than probation is to imprisonment." *Samson*, 547
U.S. at 850 (internal quotation marks omitted). As an example,
the Ninth Circuit declined to extend its holding in *Lara* to pa-
rolees, explaining "[the defendant's] parole status alone dis-
tinguishes our case from *Lara* and *Riley*." *Johnson*, 875 F.3d at
1275. In addition to parolees differing from probationers,[1]
*Fletcher* and *Lara* do not control for other reasons.

First, both *Fletcher* and *Lara* held that the operative proba-
tion agreements did not clearly or unambiguously include
cellphones as searchable items. *Fletcher*, 978 F.3d at 1019; *Lara*,
815 F.3d at 610. In *Fletcher*, the probation agreement's search
provision included the probationer's "person, [his] motor ve-
hicle or [his] place of residence." *Fletcher*, 978 F.3d at 1019. In
*Lara*, the probationer agreed to "submit [his] person and
property, including any residence, premises, container or ve-
hicle under [his] control to search and seizure." *Lara*, 815 F.3d
at 610. Certainly, *Samson* described as "salient" that parole
conditions be "clearly expressed" to the parolee. 547 U.S. at
852. But clear expression does not require an exhaustive list.
Probation agreements need not express, in granular detail,
every item subject to a search. In this case, Wood's parole
agreement provided that his "person and residence or prop-
erty under [his] control" could be searched with "reasonable
cause" because he remained in the "custody of the

---

[1] Indiana applies *Samson*'s holding to probationers, in effect lowering
a probationer's privacy expectation to that of a parolee. *Vanderkolk*, 32
N.E.3d at 779. To the extent Indiana treats probationers and parolees the
same, that determination does not render *Lara* applicable to parolees.

Department of Correction." Only a strained and unreasonable reading of these provisions would exclude a parolee's cellphone.

Second, *Fletcher* held that a state's interest in supervising a probationer terminates abruptly once the phone is secured. *Fletcher*, 978 F.3d at 1019. This reasoning, imported from *Riley*, does not find support in *Knights* and *Samson*. The state's interests are different here and justify a post-arrest, post-seizure search of a parolee's cellphone. *Fletcher* relied on *Riley*'s explanation that "once law enforcement officers have secured a cell phone, there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone." *Id.* (quoting *Riley*, 573 U.S. at 388). *Fletcher* also observed that a seized cellphone does not pose a safety risk. *Id.* But the twin interests of preventing evidence destruction and protecting officers are not the interests underpinning *Knights* and *Samson*. Rather, *Knights* and *Samson* support the state's ongoing supervisory role over parolees. If such supervision abruptly terminated once a parolee was arrested—whether for a failure-to-appear violation or a serious crime—the continuity of a state's parole system would be severely impeded. The Fourth Amendment does not dictate this unreasonable result.

## C

Several issues remain, each of which resolve in the government's favor.

*Waiver.* In his opening brief, Wood argued that two other searches were unlawful: the search of his phone's exterior (which revealed methamphetamine) and the subsequent search of his home. The government asserted Wood waived both arguments.

We begin with the arguments made in Wood's motion to suppress. A defendant who moves to suppress evidence must "identify the grounds upon which he believes suppression is warranted." *United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009). When defense counsel fails to develop a suppression argument, he deprives the government of "a meaningful opportunity to rebut [the defendant's] claims" and does not "notify the district court that it needs to address them." *Id.* Wood's motion to suppress challenged only the state investigator's data extraction—not the cellphone-cover search, and not the home search. Thus, to start, he bypassed an opportunity to challenge both searches, which, without good cause, would result in forfeiture. *See id.*

While omissions may result in forfeiture, counsel may go one step further and expressly waive arguments. *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[W]aiver is the 'intentional relinquishment or abandonment of a known right,'" *Olano*, 507 U.S. at 733, and it "precludes appellate review," *Flores*, 929 F.3d at 447. Whether a right must be waived by the defendant or may be waived by counsel depends on the right at issue. *Id*. at 447–48 (citing *New York v. Hill*, 528 U.S. 110, 114 (2000)). "[D]ecisions by counsel are generally given effect as to what arguments to pursue[.] … Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." *Hill*, 528 U.S. at 115 (citations omitted); *see also United States v. Scott*, 900 F.3d 972, 975 (7th Cir. 2018) ("[T]he district court must be able to rely on the representations given by counsel.").

Assuming Wood could have preserved his two additional arguments at the suppression hearing, *see Kirkland*, 567 F.3d at 321, his trial counsel failed to do so. To the contrary, counsel

waived Wood's right to challenge the cellphone-cover search
and home search. When asked, "[I]s the motion to suppress
strictly targeting whether this was a reasonable search of his
cell phone?", Wood's trial counsel responded, "It depends on
which search you're talking about." The colloquy continued:

> **[Trial Counsel]**: We're not going to argue with
> them taking apart the back of the phone and
> finding the packet of methamphetamine. We're
> not arguing – we're not arguing about that be-
> cause that doesn't matter in this Court or on this
> issue.
>
> **The Court**: What about the search of the home?
>
> **[Trial Counsel]**: No issue with that, as
> well. … And they take the back off the phone
> and they find the methamphetamine. No, issue
> with that, as well.

Wood contends his trial counsel later retracted this
waiver, but the record does not show a change of position. In
fact, trial counsel reiterated that Wood was not challenging
the search of his phone's exterior or the search of his home.
The district court accepted trial counsel's representations and
analyzed only the state investigator's search of Wood's cell-
phone data. Wood's appeal is thus limited to that search. *See
Scott*, 900 F.3d at 975 (finding that defense counsel affirma-
tively waived argument at revocation hearing).

*Investigatory versus regulatory searches*. Wood emphasizes
the investigatory, rather than regulatory, purpose for the state
investigator's data extraction. But the government does not
defend the search based on the special-needs exception, *see
Griffin v. Wisconsin*, 483 U.S. 868 (1987), where a distinction

between investigatory and regulatory searches is germane. Under *Knights* and *Samson*, it is of no moment that a parole agent's purpose in conducting a search is investigatory. *Caya*, 956 F.3d at 501–03 (discussing *Griffin*, *Knights*, and *Samson*). So the investigatory-versus-regulatory distinction is not relevant here.

*Status*. Because context matters under the Fourth Amendment, one's status in the eyes of the government matters. Along these lines, Wood maintains his arrest rendered *Samson* inapplicable and instead triggered *Riley*. On its face, this seems plausible—Wood was arrested, making him an arrestee, and *Riley* is about arrestees. But a parolee is on the "'continuum' of state-imposed punishments," one step removed from incarceration. *See Samson*, 547 U.S. at 850. A custodial arrest would not increase a parolee's privacy expectations by placing him outside *Samson*'s reach. Upon arrest, Wood's status was not transformed from parolee to arrestee, but from parolee to parolee-arrestee, so *Samson* continued to apply. *Cf. United States v. Jones*, 152 F.3d 680, 687 (7th Cir. 1998) ("[The State's] interests in preventing harm to the probationer and to society are fully cognizable even when the probationer is in the State's custody.").

*Terms of the parole agreement*. Finally, Wood argues the search of his cellphone violated the precise terms of his parole agreement, which authorized "reasonable search[s]" only when an "official has reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole." According to Wood, once he was arrested, he could no longer be "violating" or in "imminent danger of violating" a parole condition, eliminating the

possibility of "reasonable cause." There are a few problems with this argument.

To begin, Indiana courts have not interpreted this provision in the manner Wood suggests. For example, in *State v. Harper*, a parolee was arrested for violations of parole conditions. *State v. Harper*, 135 N.E.3d 962, 967 (Ind. Ct. App. 2019), transfer denied, 143 N.E.3d 950 (Ind. 2020). Thereafter, parole officers searched both his home and storage unit, with the latter search revealing evidence of additional crimes. *Id.* The Court of Appeals of Indiana held that the warrantless search of the parolee's storage unit did not violate the Fourth Amendment because the search "was predicated on the parole conditions and reasonable suspicion." *Id.* at 972.

Indeed, Wood's reading, which requires an "ongoing parole violation", would lead to absurd results. Taken to its logical end, the "ongoing parole violation" requirement would prevent parole agents from conducting a reasonable search even if they had reasonable cause to believe a parolee committed a robbery the day before. Unless the robbery was "ongoing," parole agents would be unable to exercise authority under the parole agreement to conduct a reasonable search for evidence. This understanding of the parole agreement renders its search provision virtually meaningless, a result "no reasonable person could approve." *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 234 (2012).

Finally, even if parole agents violated the parole agreement's precise terms, such a violation would not, on its own, transgress the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 178 (2008) (noting "it is not the province of the Fourth Amendment to enforce state law"). The terms of the parole

agreement are "neither dispositive nor inconsequential in the constitutional analysis. Rather, [they are] one factor in considering the totality of the circumstances." *United States v. Graham*, 553 F.3d 6, 17 (1st Cir. 2009). Under the Supreme Court's guidance, the parole agreement's terms do not directly shape the contours of Fourth Amendment reasonableness. They merely elucidate the nature of the parolee's privacy expectations.

### III

This case is controlled by *Knights* and *Samson*, not *Riley*. On balance, Indiana's interests outweigh Wood's privacy expectation as a parolee whose person, residence, and property were subject to search. So the warrantless search of Wood's cellphone was reasonable. For these reasons, we AFFIRM the district court's denial of Wood's motion to suppress.